STATE OF NEW JERSEY (ELEANOR SAVASTINI, PLAIN-
TIFF-RESPONDENT, v. LUIGI SAVASTINI, DEFENDANT-
APPELLANT.

Argued February 1, 1954—Decided March 1, 1954.

508

510

*Mr. Frank M. Lario* argued the cause for appellant.

*Mr. E. Milton Hannold,* Prosecutor of Gloucester County, argued the cause for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The jurisdiction of the Gloucester County Juvenile and Domestic Relations Court to enter a support order under the Uniform Desertion and Nonsupport Act, *N. J. S.* 2A:100-2 *et seq.,* in favor of a wife living in Gloucester County against a husband resident in Camden County, is the single question raised by this appeal which was brought here of our own motion while pending in the Appellate Division.

The defendant husband appeared before the Gloucester County Court on October 16, 1952, in response to an order to show cause why a support order should not be granted upon his wife's sworn complaint, filed September 6, 1952, charging, not desertion, but the alternative ground under the act, *State v. Bruneel,* 14 *N. J.* 53 (1953), that from July 29, 1952 he "wilfully refused and neglected" to support her, "she being in necessitous circumstances." The wife had moved to Gloucester County on July 29, 1952, to live with her sister, leaving her husband at their Camden County home.

The parties arrived at a settlement on October 16 during the course of the hearing. They endorsed their consents to

the order under attack which, dated October 16, 1952, recites that the husband and wife "having reached an agreement as to the amount of a weekly order to be paid for the support and maintenance" of the wife, the defendant "shall pay the sum of $15.00 weekly" for her "support and maintenance" to the chief probation officer.

At the close of the hearing of October 16 the court, according to the parties' stipulation, "set November 6, 1952 at 1:30 P. M. as the date for a formal hearing in the matter." It further appears from the stipulation that when the parties appeared on November 6 "the defendant through his counsel declined to proceed with a formal hearing at the time stated and at the time signed a consent order" agreeing to pay $15 weekly "to the Chief Probation Officer" for the support of his wife.* But there is no order dated November 6 in the official court record. The only support order filed is that of October 16, and as that is the order to which the subsequent proceedings to vacate are expressly addressed, that order would appear to be the only support order which was entered in the proceeding. We conclude that what happened on November 6 was that the order of October 16, which was a temporary or *pendente lite* order authorized by *N. J. S.* 2*A*:100-3, was continued in effect by mutual consent upon the understanding that it was to be treated as a permanent order for future support authorized by *N. J. S.* 2*A*:100-4.

The several sections, pertinent to our inquiry, of the uniform act adopted in New Jersey with some modifications 37 years ago, *L.* 1917, *c.* 61, now read:

"2*A*:100-2.  Desertion or nonsupport of wife or children in destitute or necessitous circumstances

"Any husband who deserts or willfully neglects or refuses to provide for the support and maintenance of his wife, in destitute or necessitous circumstances, or a parent who deserts or willfully neglects or refuses to provide for the support and maintenance of his or her minor child or children, in destitute or necessitous circumstances, is guilty of a misdemeanor. If a fine be imposed, the court may direct the same to be paid in whole or in part to the wife, or to the guardian, custodian or trustee of said minor child or children.

**"2A:100-3.  Order of support *pendente lite***

"At any time after a sworn complaint is made charging an offense under section 2A:100-2 of this title, and before trial, the court having jurisdiction may enter such temporary order as may seem just, providing for the support of the wife or children, or both, *pendente lite*, and may punish a violation of such order as for contempt.

**"2A:100-4.  Order for future support; release on recognizance conditioned on obeying order**

"Before trial, with the consent of the defendant, or at the trial, on entry of a plea of guilty, or after conviction, instead of imposing the penalty provided for by section 2A:100-2 of this title, or in addition thereto, the court, having regard to the circumstances and to the financial ability or earning capacity of the defendant, may make an order, which shall be subject to change by the court from time to time as circumstances may require, directing the defendant to pay a sum certain periodically to the wife, or to the guardian or custodian of the minor child or children, or to an organization or individual approved by the court as trustee.  The court may release the defendant from custody on probation, upon his or her entering into a recognizance, with or without surety, in such sum as the court may order and approve.  The condition of the recognizance shall be such that if the defendant shall personally appear in court whenever ordered to do so, and shall comply with the terms of the order, or of any modification thereof, the recognizance shall be void, otherwise in full force and effect.

**"2A:100-5.  Violation of order**

"If the court be satisfied by information and due proof under oath that the defendant has violated the terms of the order, it may forthwith proceed with the trial of the defendant under the original charge, or sentence the defendant under the original conviction or plea of guilty, or enforce the suspended sentence or punish for contempt, as the case may be.  In case of forfeiture of a recognizance, and the enforcement thereof by execution, the sum recovered may, in the discretion of the court, be paid in whole or part to the wife, or to the guardian, custodian or trustee of such minor child or children.

\*        \*        \*        \*        \*        \*        \*        \*

**"2A:100-7.  Proof of desertion**

"Proof of desertion of the wife, child or children in destitute or necessitous circumstances, or of neglect or refusal to provide for the support and maintenance of such wife, child or children in destitute or necessitous circumstances, shall be *prima facie* evidence that the desertion, neglect or refusal was willful.

**"2A:100-8.  Place of residence confers jurisdiction of offense**

"The place of residence at the time of the desertion of the wife, child or children, under the provisions of this chapter, shall confer jurisdiction of the offense set forth therein, upon the county, county district, criminal judicial district or juvenile and domestic relations court having territorial jurisdiction of the place of such residence,

until the deserted party shall establish a legal residence in some other county or state."

The proceedings to vacate the order of October 16 were brought in May 1953 by defendant's present counsel who replaced former counsel after defendant fell into arrears and was imprisoned upon being adjudged in contempt. The ground urged, and repeated in the brief here, is that the juvenile and domestic relations court of a county may entertain jurisdiction of a complaint under the uniform act only when the parties' matrimonial domicil is in such county or the complaining wife shows that, within the principle stated in *Shepherd v. Ward*, 5 N. J. 92 (1950), she is entitled to maintain therein a separate domicil apart from her husband by reason of his acquiescence, by his abandonment of her or by his *delictum*. If the objection does go to the court's jurisdiction of the subject matter of the complaint, it was not waived by defendant's consents of October 16 and November 6 to the entry of the support order, *State v. Bruneel, supra.*

Defendant refers to decisions interpreting former versions of the Juvenile and Domestic Relations Court Law as limiting the jurisdiction of the juvenile and domestic relations courts as to adult offenses to offenses of which desertion was one ingredient and proof that the wife was likely to become a public charge was another. *VanKeegan v. Juvenile, etc., Court*, 132 N. J. L. 21 (*Sup. Ct.* 1944); *Coffey v. Coffey*, 125 N. J. L. 205 (*Sup. Ct.* 1940). But neither those decisions nor the statute they construed in any wise suggests the additional limitation requiring that the action be brought in the county of the parties' matrimonial domicil or where the wife was entitled to have a domicil apart from her husband. If offenses under the uniform act were not cognizable by those courts under the Juvenile and Domestic Relations Court Law as it then read, it was because desertion is not an element of the offense under the uniform act if willful neglect and refusal to support is shown, or because N. J. S. 2A:100-4 authorizes a

support order in an amount commensurate with the husband's financial ability or earning capacity and does not restrict the award to such amount as will prevent the dependent from becoming a public charge. At all events, these restrictions upon jurisdiction of offenses under the uniform act were removed by amendments to the Juvenile and Domestic Relations Court Law by *L.* 1946, *p.* 268, and *L.* 1950, *p.* 1117, embodied in *N. J. S.* 2A:4–18 which superseded *R. S.* 9:18–14. The uniform act is a statute the "gravamen" of offenses under which "is the failure or neglect of 1 member of the family to satisfy or discharge his legal obligations to another member of the family" within *N. J. S.* 2A:4–18(c). *State v. Bruneel, supra.* And authority is now expressly invested in juvenile and domestic relations courts to grant support orders in amounts commensurate with the husband's financial ability or earning capacity. *Lasasso v. Lasasso,* 1 *N. J.* 324 (1949); *Bonanno v. Bonanno,* 4 *N. J.* 268 (1950).

██ Defendant next argues that the uniform act itself restricts jurisdiction of offenses thereunder to the court of the county of the parties' matrimonial domicil or wherein the wife is entitled to have a separate domicil. He refers us to *N. J. S.* 2A:100–8, which was added to the uniform act by *L.* 1946, *c.* 292. That section provides:

"The place of residence at the time of the *desertion* of the wife * * * shall confer jurisdiction of the offense * * * upon the * * * juvenile and domestic relations court having territorial jurisdiction of the place of such residence, until the *deserted* party shall establish a legal residence in some other county or state." (Emphasis supplied)

Apart from the fact that ordinarily statutes providing that an action shall be brought in a particular county are interpreted to deal with venue, *Restatement, Judgments, sec.* 7, *Comment, p.* 43, a procedural matter which may be waived by the defendant, 56 *Am. Jur., p.* 44, and not to relate to the jurisdiction of the court to deal with the subject matter, the section by its very words applies only when desertion is charged, which opposes rather than favors defendant's con-

tention, as this strongly implies that no like restriction is intended to apply as to the offense of willful refusal and neglect to support. Any contention of the husband that the wife left him without justifiable cause is a matter of defense to the charge of willfulness, see cases collected in 10 *U. L. A., p.* 15 *et seq.,* but has no bearing upon the jurisdiction of the subject matter. See *Adams v. State,* 164 *Wis.* 223, 159 *N. W.* 726 (*Sup. Ct.* 1916).

The Uniform Desertion and Nonsupport Act was the product of widespread dissatisfaction with the inadequacy of the remedies afforded neglected wives and children to compel proper support by those legally obliged to provide that support. We had occasion recently to comment upon the narrow scope of such remedies, in *Greenspan v. State,* 12 *N. J.* 426 (1953). While the Chief Justice pointed out in his opinion in that case that the law has historically been more generous in providing remedies for neglected wives than for neglected children, the framers of the uniform act made its stringent remedy for the translation of the legal duty of support into the reality of proper support available for both wives and children. The act "gives a summary and cumulative remedy and a harsher one than that afforded by the equity courts and, to restrain and, if possible, suppress the evil of dereliction of marital and parental duty, as well as to provide a more efficacious means of enforcing performance of such duties, it has made willful neglect thereof criminal," *Fisher v. Sommerville,* 83 *W.Va.* 160, 98 *S. E.* 67, 68 (*Sup. Ct. App.* 1919) ; see also *State v. Chaffman,* 15 *N. J. Super.* 492 (*App. Div.* 1951).

The statutory scheme initiates two separate and distinct proceedings by a single complaint, one a civil proceeding and the other a criminal proceeding. "The criminal prosecution could go on without the award of money for support, and maintenance could be enforced without the criminal prosecution." *Fisher v. Sommerville, supra.* The law's primary and ultimate objective is to secure an adequate support order, the criminal charge supplying coercive pressure to that end. As in the case of the separate maintenance

action in equity, in which, before a determination of the merits, temporary maintenance is allowable "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just," *N. J. S.* 2*A*:34–23, the uniform act in *N. J. S.* 2*A*:100–3 provides for the making of a temporary order of support "as may seem just" to be entered at any time after the sworn complaint is made charging a criminal offense under *N. J. S.* 2*A*:100–2 and "before trial" of the charge. Except as the temporary order may be supplanted by a permanent order for future support entered with the defendant's consent without a prior determination of the criminal charge, the temporary allowance may continue until the criminal charge is disposed of, *State v. Harris,* 88 *W. Va.* 97, 106 *S. E.* 254 (*Sup. Ct. App.* 1921), and the accused may demand the prompt disposition of the charge. *State v. Chaffman, supra.*

"The complaint makes out a *prima facie* case for a temporary allowance or award of support, as the verified bill or answer or petition and affidavit did in equity. It continues until the final hearing, when a permanent allowance or award is made or refused agreeably to the determination of the controversy on its merits. In equity, that was effected by the decree on the merits. Here, it is to be effected by the trial of the indictment, if one is returned, and, in the event of a failure to indict, by the discharge of the accused." *Fisher v. Sommerville, supra.*

The court's authority to enter a permanent order for future support is not dependent, however, upon the defendant's conviction upon or entry of a plea of guilty to the criminal charge. The court is empowered to direct the entry of a permanent order in either such case, but *N. J. S.* 2*A*:100–4 giving that authority provides that such an order may also be entered "Before trial, with the consent of the defendant." This defendant's action on November 6 in declining to proceed to final hearing and in consenting that the temporary support order of October 16 be treated as a permanent order constituted the statutory consent before trial to the entry of a permanent order for future support. Upon the entry of a permanent order with the defendant's consent the function of the criminal charge to

bring coercive pressure upon the defendant has been largely served. However, the criminal charge is not dismissed. Its prosecution is held in abeyance to coerce defendant's obedience to the terms of the order to which he has consented. A violation of the permanent order, like a violation of the temporary order, may result, as happened here, in the defendant's being held in contempt. The contempt is a civil and not a criminal contempt. *State v. Chaffman, supra; People v. Elbert,* 287 Ill. 458, 122 N. E. 816 (*Sup. Ct.* 1919). But N. J. S. 2A:100–5 does not limit the court to the use of that sanction. The section expressly provides that the court may instead "forthwith proceed with the trial of the defendant under the original charge." Plainly, the statute contemplates that so long as the permanent order is outstanding (it may be changed by the court from time to time as circumstances may require, N. J. S. 2A:100–4), the accused may not have the criminal charge dismissed nor, having consented to the entry of the permanent order, has he any standing to insist upon its prosecution to a conclusion.

In *State v. Bruneel, supra,* we suggested, but expressly reserved decision upon, the questions whether the Legislature contemplated prosecution of the criminal proceeding under the uniform act in the juvenile and domestic relations court in light of the requirement of N. J. S. 2A:4–18 for summary disposition of adult offenses in that court, and if such was intended, whether N. J. S. 2A:4–18 to that extent unconstitutionally invades rights of the criminally accused to indictment and trial by jury. The question arose from a consideration of the substantially more severe maximum penalties upon conviction provided by N. J. S. 2A:100–2 which revised and superseded R. S. 2:121–2. The new maximum penalties are of such severity as to suggest doubt whether an interpretation of the pertinent statutes could be justified as intended or effective to eliminate indictment and trial by jury of the offense and to permit its disposition in a summary manner in the juvenile and domestic relations courts. Since the criminal proceeding in the instant case is

dormant, we are not called upon to answer the reserved questions here. However, it is not without significance that the reported decisions under the uniform act disclose no criminal prosecution in this State thereunder except upon indictment and trial by jury, until *State v. Bruneel*. See, for example, *State v. Chaffman, supra; State v. Burrell*, 8 *N. J. Misc.* 215 (*Sup. Ct.* 1930). And it appears that the Essex County Juvenile and Domestic Relations Court on at least one occasion allowed a support order after the husband's trial and conviction upon an indictment in the former Essex Quarter Sessions, *Lowing v. Lowing*, 8 *N. J. Misc.* 488 (1930).

None can gainsay the desirability of having both proceedings cognizable in the same court. The nature and objectives of the uniform act make it highly undesirable that the prosecution of the criminal phase of a complaint proceed in one court while the civil phase is determined in another court. This fractionalization can only tend to cumbersome administration of the law and impair its effectiveness to accomplish its beneficent and socially desirable ends. There is no question that both proceedings may be entertained in the County Courts of general criminal jurisdiction. It is the problem as it relates to the specialized juvenile and domestic relations courts which plainly commends itself to legislative clarification.

Returning to the question whether there is any statutory preclusion of jurisdiction in the Gloucester court to entertain the complaint herein, clearly there is none, at least in respect of the wholly civil aspect which the action assumed from the outset and presently maintains.

And the pertinent rules of court do not aid the defendant. *Rule* 6:2–8, in effect when the complaint was filed, provided:

"Proceedings before the Juvenile and Domestic Relations Court shall be held in the county in which the circumstances occasioning the petition or complaint are alleged to have occurred."

The "circumstances occasioning the petition or complaint" of the wife in this case are the defendant's willful refusal

and neglect to support her "since the 29th day of July" to the date of the filing of the complaint, throughout which period she lived in Gloucester County. The "circumstances occasioning the petition" may therefore well be viewed "to have occurred" in their entirety in that county within the meaning of that rule. The revised rule, *R. R.* 6:3–1, effective September 9, 1953, adds to the former rule the clause "or within the county in which the plaintiff, the defendant, or the juvenile offender resides at the time of the filing of the complaint." This hardly suggests that it is the policy of the rules to complicate a neglected wife's remedy for support with considerations of technical questions of her matrimonial domicil or her right to maintain a separate domicil apart from her husband.

But at all events *Rule* 6:2–8, as its caption shows, was merely a procedural venue rule which could be and was waived by the defendant when he appeared and consented to the entry of the support order and waived a determination of the merits of the criminal charge.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and OLIPHANT—2.