THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MORRIS GREENBERG, DEFENDANT-APPELLANT.

Argued November 22, 1954—Decided December 6, 1954.

569

*Mr. Murray Greiman* argued the cause for appellant.

*Mr. Frank J. V. Gimino* argued the cause for respondent (*Mr. Frederick T. Law*, Prosecutor of Hudson County, attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   On March 3, 1953 the defendant was indicted under the Uniform Desertion and Nonsupport Act, *R. S.* 2:121-1 and 2, now *N. J. S.* 2A:100-1 and 2, upon his wife's complaint that on December 7, 1950 he deserted her and their month-old child and willfully neglected and refused to provide for their maintenance and support.   He was convicted by a jury in the Hudson County Court on the counts charging the failure of duty toward his wife but was acquitted on the counts charging the failure of the same duty toward the child.   The conviction was affirmed by unanimous vote in the Appellate Division, 30 *N. J. Super.* 592 (1954).

Defendant appeals to this court purportedly of right under *R. R.* 1:2-1(*a*), which allows an appeal of right in cases determined by the Appellate Division arising under the Constitutions of the United States or this State.   We deferred decision upon the State's motion for dismissal of the appeal pending oral argument.   We are satisfied that defendant has not met the test under *R. R.* 1:2-1(*a*) of a showing that a substantial constitutional question is involved, *Starego v. Soboliski*, 11 *N. J.* 29 (1952).   Indeed, we question that he should be heard at all to argue the constitutional contention which does not appear to have been raised below.   See *State ex rel. Wm. Eckelmann, Inc., v. Jones*, 4 *N. J.* 374 (1950).   However, the appeal presents questions under the recently enacted Uniform Reciprocal Enforcement of Support Act, *L.* 1952, *c.* 197, *p.* 697, since extensively amended by *L.* 1953, *c.* 245, *p.* 1728, *N. J. S.* 2A:4-30.1 *et seq., N. J. S. A.*

This statute has not been considered heretofore by this court and we accordingly have decided to determine the meritorious questions argued, treating the appeal as if properly before us upon a grant of certification under *R. R.* 1:10–2(*e*) governing certification of causes where the Appellate Division has decided a question of substance relating to the construction or application of a statute of this State which has not been but.should be settled by this court.

The Uniform Desertion and Nonsupport Law was adopted by New Jersey 37 years ago in *L.* 1917, *c.* 61, *p.* 110. Under that law it is a misdemeanor for a husband to desert or willfully neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances or for a parent to fail in the same duty toward his minor child. However, "The law's primary and ultimate objective is to secure an adequate support order, the criminal charge supplying coercive pressure to that end." *State v. Savastini*, 14 *N. J.* 507, 516 (1954). The proceeding, for that reason, has a dual aspect: the dependent's complaint initiates two separate and distinct proceedings, one civil and the other criminal. The complaint may be brought either in the County Court or in the juvenile and domestic relations court. This court has twice left open the question whether the criminal aspect of the offense is triable under summary procedure in the juvenile and domestic relations court, or only upon indictment and trial by jury in the County Court, and has expressed the hope, not yet fulfilled, that the matter would receive legislative attention. *State v. Savastini, supra; State on Complaint of Bruneel v. Bruneel*, 14 *N. J.* 53 (1953).

The National Conference of Commissioners on Uniform State Laws has long recognized that, while the Uniform Desertion and Nonsupport Law "sought to improve the enforcement of duties of support through the criminal law * * *, it made no reference to enforcement as against husbands and fathers who fled from the state." 9A *U. L. A.*, 1953 *Supp., p.* 53. The Uniform Reciprocal Enforcement of Support Act is designed to remedy this void. The statute

"attempts to improve and extend by reciprocal legislation the enforcement of duties of support through both the criminal and civil law." *Ibid.* Thus the statute is merely supplemental to existing laws designed to compel support of dependents. To make this clear, section 3 of the act, *N. J. S.* 2A :4–30.3, expressly provides that "The remedies herein provided are in addition to and not in substitution for any other remedies."

A detailed two-state procedure is provided by sections 9 to 17 of the act, which are *N. J. S.* 2A :4–30.9 to 30.17 of our statute. Without in any wise binding ourselves to the views expressed by the National Conference of Commissioners as to the interpretation to be made of them, and reserving such matters and also the questions of due process raised thereby for determination in cases which properly present those questions, we quote the Commissioners' comments upon the sections (9A *U. L. A.*, 1953 *Supp., pp.* 54–55) :

"In the past, the greatest difficulty in enforcing support where the parties are in different states has been the expense of travel to a distant state to litigate the rights of the destitute obligee. Under this Act this expense can be reduced to filing fees plus a few postage stamps. In a nutshell, this two-state proceeding is as follows: It opens with an action (Section 9) which normally will be commenced in the state where the family has been deserted (the initiating state). A very simplified petition is filed (Section 10). The judge looks it over to decide whether the facts show the existence of a duty to support and if they do he sends the petition and a copy of this Act to a court of the responding state to which the husband has fled or in which he has property (Section 11). That court will take the steps necessary to obtain jurisdiction of the husband or his property, will hold a hearing (Section 12) and if the court finds that a duty of support exists, it may order the defendant to furnish support (Section 13) and will transmit a copy of its order to the court in the initiating state (Section 14). To enforce compliance with its orders the court may subject the defendant to such terms and conditions as it may deem proper, may require him to furnish bond or make periodic payments or, in case of refusal, may punish him for contempt (Section 15). It has the duty to transmit to the initiating court any payments it receives and upon request to furnish a certified statement of those payments (Section 16). The initiating court must receive and disburse these payments (Section 17).

This simple two-state procedure can be carried out with a minimum

of expense to the family or the state—the usual court costs and postage for the transmission of papers and money. Yet it preserves due process, for each party pleads in his own court. Provisions covering other details or procedure have been kept out of the Act so that the usual rules for obtaining jurisdiction for carrying on the procedure and for appeals may be held to govern."

In the instant case the wife invoked the reciprocal legislation by complaint filed with the Hudson County Juvenile and Domestic Relations Court on September 17, 1952. The complaint sought an allowance of $40 weekly for the support of herself and the child. Defendant was living at his parents' home in the Bronx, where he had been living since December 7, 1950, the date of his alleged desertion of his wife and child in Jersey City. The juvenile and domestic relations court made the findings prescribed by *N. J. S.* 2A:4–30.11 and forwarded the required papers to the Family Court Division of the Domestic Relations Court of the City of New York, Bronx County. The New York court summoned defendant and without prior notice to the wife held a hearing on November 26, 1952 at which the husband alone testified. He swore that he was and had been unemployed since August 1952. The court found that he could readily find work in New York if he tried and that he had an earning capacity of $3,000 annually. The support order made, however, was for $15 weekly for the support of the infant only, with no allowance for the wife.

It was after this failure of her effort in that wise to obtain support for herself that the wife for the first time brought a complaint under the Uniform Desertion and Nonsupport Act resulting in the indictment handed up March 3, 1953 under which defendant was convicted.

Defendant argues that the proceedings under the uniform reciprocal law not having resulted in a support order for the wife, those proceedings must be deemed in law to operate as a bar to any action, civil or criminal, upon his wife's complaint under the Uniform Desertion and Nonsupport Act. He contends that the determination of the New York court

is *res judicata* upon the issues of his alleged desertion and willful neglect or refusal to support his wife, or that the wife elected the procedure and is bound by the result, or that our courts are compelled by the full faith and credit clause of the Federal Constitution, *Article IV, Section I*, to recognize the New York court's order as determining in his favor the questions of his alleged desertion and willful neglect or refusal to support her.

The Appellate Division correctly disposed of defendant's argument in holding that the wife's proceeding under the reciprocal legislation was of a civil nature and could not operate to bar the State from redressing the criminal offense. While *N. J. S. 2A*:4–30.7, as it read before the 1953 amendment thereof, provided that "Duties of support enforceable under this act are those imposed or imposable under the laws of any State where the alleged obligor was present during the period for which support is sought or where the obligee was present when the failure to support commenced, at the election of the obligee," and thus the wife might have initiated the proceeding by a complaint appropriate to the commencement of the dual civil and criminal action under the Uniform Desertion and Nonsupport Act, the complaint she filed lacked the allegations essential to invoke the jurisdiction of the Hudson County Juvenile and Domestic Relations Court under the latter act. *State v. Bruneel, supra.*

But there are other reasons which also show the lack of merit in defendant's argument.

His contention requires a determination of what it was the New York court decided as revealed by the record of that proceeding. *Miller v. Miller,* 13 *N. J.* 555 (1953). An examination of that record does not show that the New York court decided in defendant's favor the issues of desertion and willful neglect or refusal to support. Rather the implication is plain that those issues were resolved against him. An order of support for the wife was denied only because the New York court conceived that her right to support under the case made by the combined New Jersey and

New York records could be recognized upon "a public charge basis only," and there was no showing that the wife was likely to become a public charge. The order made in favor of the infant shows, however, that the court was satisfied that the allegations of desertion and nonsupport were true. The limitations as to the circumstances under which, on a public charge basis, support may be awarded, and upon the amount of support allowable, *VanKeegan v. Juvenile, etc., Court,* 132 *N. J. L.* 21 (*Sup. Ct.* 1944); *Boger v. Zimmerman,* 132 *N. J. L.* 282 (*Sup. Ct.* 1944); *Warner v. Gloucester County Court of Domestic Relations,* 131 *N. J. L.* 455 (*Sup. Ct.* 1944), do not obtain under the Uniform Desertion and Nonsupport law. Under that act a wife may be awarded support in an amount commensurate with the husband's financial ability or earning capacity whether or not she needs the support to prevent her becoming a public charge, *State v. Bruneel, supra; State v. Savastini, supra.* Thus the situation is one falling directly within the express reservation of the reciprocal statute that its remedies are additional to and not in substitution for other remedies. And the difficulty arising from the defendant's absence from the State which would have confronted the wife had she brought her original proceeding under the Uniform Desertion and Nonsupport law disappeared when she initiated the present cause. The defendant came voluntarily to New Jersey to plead to and stand trial upon the indictment.

Defendant argues next that the State's evidence was insufficient to withstand his motions for acquittal at the end of the State's case and the end of he entire case, and that in any event the jury verdict was against the weight of the evidence. A consideration of the proofs at the trial reveals the lack of substance in both contentions.

Clearly there was evidence of a desertion on December 7, 1950. Defendant and his wife journeyed to the home of defendant's parents on that date after his father was injured in an automobile accident. The wife returned to Jersey City that night but the defendant stayed and telephoned her a

day or two later and said he was not coming back. He sent his sister to pick up his clothing and personal belongings.

■ So far as failure to support is concerned he misconceives the type of crime charged in arguing that there was no proof of a failure to support on December 7, 1950, the date alleged in the indictment. This was a continuing crime. The date alleged was the date of desertion. Necessarily the proofs of failure to support may not coincide with the precise date of the desertion, and there is no reason why they should. When he left there was, according to the wife's testimony, "not too much more" than $500 in a joint bank account. Otherwise, she said, "He left me with absolutely no money. He called his office [defendant was then working in Newark] and told his office to send his check to the Bronx to his mother's home." Defendant paid her nothing for several months after the desertion until he began paying her $20 weekly after agreeing to do so when she first brought proceedings for an adequate support order in the Hudson County Juvenile and Domestic Relations Court. Those proceedings were dismissed without prejudice on May 18, 1951. The wife went to work but shortly had to quit because she could get no one to help her with the baby. Defendant's payments under his agreement were irregular and often made only when the wife threatened judicial proceedings. Finally, in July 1952 the husband reduced the payments to $10 weekly and in the September following the wife started the mentioned proceedings under the Uniform Reciprocal Enforcement of Support Act.

■ Plainly the jury, despite the defendant's testimony contradicting the wife in many particulars, could reasonably find that the defendant willfully neglected and refused to provide his wife with support in an amount commensurate with his financial ability or earning capacity.

■ Defendant argues next that the verdict was fatally defective for inconsistency and self-contradiction, pointing to the fact that he was found not guilty of non-support of the child, but guilty of the non-support of the wife. The

answer is that the jury may reasonably have concluded that such payments as he did make were at least adequate for the child's support. As the Appellate Division stated, little was required to support so young a child.

The last contention made is that the indictment was barred by the two-year statute of limitations applicable at the time to misdemeanors, *R. S.* 2:183–2, now *N. J. S.* 2A:159–2, and enlarged to five years by *L.* 1953, *c.* 204, *p.* 1554. But, as previously remarked, this was a continuing crime and a conviction under the indictment is not void if the State's proofs established, as they did, the commission of the crime within two years before the indictment was handed up. *State v. Unsworth,* 85 *N. J. L.* 237, 241 (*E. & A.* 1913). But at all events this indictment alleges that defendant after December 7, 1950 was a fugitive from justice, and *R. S.* 2:183–2 by its express terms is inapplicable "to any person fleeing from justice." The trial judge charged the jury that "whether or not this is so [that is, the allegation that defendant was a fugitive from justice] is also a question of fact for the jury to determine." The evidence amply sufficed to support a finding that defendant was a fugitive from justice, *cf. In re Pillo,* 11 *N. J.* 8, 14 (1952).

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.