583 A.2d 364
IN THE MATTER OF J.N.G. A/K/A N.G.

Superior Court of New Jersey
Appellate Division

Submitted September 26, 1990—Decided October 17, 1990.

Before Judges GAULKIN, HAVEY and SKILLMAN.

*George R. Wiggs*, attorney for appellant J.N.G.

*John Kaye*, Monmouth County Prosecutor, attorney for respondent State of New Jersey (*Anita R. White*, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

J.N.G. (hereinafter "G.") appeals from an order denying his petition to expunge records of a 1975 criminal conviction and a 1988 arrest.

On October 24, 1974 G. was indicted in Monmouth County for attempted murder, threatening to take a life and atrocious assault and battery of L.G., and atrocious assault and battery of A.G., M.G. and L.Z.; three further counts of the indictment charged G. with lesser assaults on the same individuals. Pursuant to a plea agreement, G. pleaded guilty to three counts of atrocious assault and battery on L.G., A.G. and L.Z., and the remaining counts were dismissed. On January 24, 1975, he was sentenced to three concurrent state prison terms of not less than six and not more than seven years. He was paroled as of April 12, 1977 and his parole was terminated on August 22, 1979 "by reason of the expiration of his maximum sentence."

On September 8, 1989, G. filed his expungement petition in the Law Division, Monmouth County. In addition to its recital of the 1975 conviction, the petition set forth that G. had been arrested in Elizabeth on November 6, 1988 for aggravated assault and possession of a dangerous weapon, that the charges had been "administratively downgraded" to simple assault and that the simple assault charge had been dismissed in the Elizabeth Municipal Court on April 24, 1989. G. asked for expungement of both the 1975 conviction and the 1988 arrest.

The petition, and the court's order fixing a hearing date, were served on all interested parties. *N.J.S.A.* 2C:52–10. At the first hearing on November 17, the Monmouth County Prosecutor entered his objection to expungement and stated that the Aberdeen Township municipal prosecutor and the State Police objected also. The court set the matter down for further hearing on January 5, 1990. At that adjourned hearing, the municipal prosecutor, who said he had been "instructed by the chief of police" to enter the objection, represented that he "would not attempt to produce independent evidence about the character of the defendant" but rather that "our objection is

more on the nature of the offense and the combination of those offenses rather than any independent knowledge or information concerning the defendant and his actions and character since the date of the offense." He requested another adjournment so that he could present "either the chief of police or deputy chief of police who could establish the basis of maintaining the record and why they believe it is necessary for the protection to both the residents and police officers to have that information available."

At the third hearing on February 13, the municipal prosecutor presented Aberdeen Township Police Detective Wicklund, who had responded to the G. home when the crimes were first reported. Wicklund testified that he had found G.'s wife, her two children and her brother in the house, all of whom appeared to have knife wounds. He saw blood throughout four or five rooms of the house, including "a lot of blood on the walls." G. admitted his involvement, telling Wicklund that there had been a "domestic problem between he and his wife." Mrs. G. and her brother were seriously hurt and were near death in the hospital. According to Wicklund, G. was very calm and showed no remorse. Wicklund acknowledged having no knowledge of G. or his history after his conviction.

The only other proof proffered in opposition to expungement was a police report concerning the 1988 arrest, which apparently described a stabbing with a knife.[1] The municipal prosecutor urged that the proofs showed that G.

is a person with such violent propensities, that the nature of the original crime, an indication that he's still willing, just a short period ago, to use a knife on another individual, even if it was a justified situation, means that the State has a right to maintain these records.

In denying the motion to expunge the record of the 1974 conviction, the judge reasoned that the underlying incident was

---

[1]The report was not introduced in evidence. G.'s attorney asserted that the report was "not complete" and that the ultimate dismissal of the charges was based upon a showing that G. and his present wife were attacked in their rooming house by the alleged victim.

"very serious," with "four people involved, two of them near death." He found "missing," however, "something to allow me to balance this." He recognized that one relevant factor is "what impairment would there be to the State if the records were expunged?"; he found that "I don't have anything as to how they would be impaired." However, the judge also found that G. had made no showing of any particularized need for expungement, such as "he has a job application pending right now for a good job that he can't get because of this conviction, that he would get if that were expunged." The judge concluded that "the State has met the burden of proof."

■ We find that conclusion to be unwarranted. The 1975 convictions satisfied all of the statutory preconditions for expungement of the records. See *N.J.S.A.* 2C:52–2.[2] The verified petition fulfilled all of the requirements of *N.J.S.A.* 2C:52–7 and 8. The only statutory ground for denial of the requested relief, accordingly, was that set forth in *N.J.S.A.* 2C:52–14b:

> The need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in this chapter. An application may be denied under this subsection only following objection of party given notice pursuant to 2C:52–10 and the burden of asserting such grounds shall be on the objector.

Although the municipal prosecutor represented that he would present testimony of the chief or deputy chief of police as to the need for the availability of the records, he did not do so. He relied, rather, on the circumstances of the incident which led to the conviction. While the circumstances of a given offense might arguably have some bearing on the "need for the availability of the records," the record here does not show any such relationship.

To be sure, the record shows that G. committed what may properly be characterized as heinous offenses for which he was

---

[2]The State does not question that the three convictions are properly considered as one for expungement purposes. *See In re Patrick Fontana,* 146 *N.J.Super.* 264, 369 A.2d 935 (App.Div.1976).

convicted of serious crimes. Nevertheless, he is presumptively entitled to have the records of that conviction expunged at this time; he need not show any specific need for expungement. *N.J.S.A.* 2C:52-2. The State cannot be said to have sustained its burden of overcoming that presumption simply by asserting that bad crimes establish a "need for the availability of the records", particularly since the statute specifies those crimes not subject to expungement (*N.J.S.A.* 2C:52-2b) and permits the use of expunged records for a variety of law enforcement and other official purposes (*N.J.S.A.* 2C:52-17 to 23). The fact that G. was recently arrested for assault with a weapon adds little to the equation: not only were those charges downgraded and dismissed (*see N.J.S.A.* 2C:52-6(a)), but again the State made no particularized showing as to why or how that arrest enhanced the need for the availability of the records. For those reasons, we conclude that the trial judge erred in denying G.'s petition to expunge the records of the 1975 conviction.

■ The trial judge also denied the petition to expunge the record of the 1988 arrest, relying on the language of *N.J.S.A.* 2C:52-6a that the petitioner "may ... present a duly verified petition ... to the Superior Court in the county in which the disposition occurred." The judge found that the expungement remedy must be "strictly construed," that expungement is "only cognizable in the county where the disposition occurred" and that accordingly he did not have "any jurisdiction over the charge in Union County."

Although the statute fixes the venue for proceedings under *N.J.S.A.* 2C:52-6, we find no reason to infer that the legislature intended that provision to be jurisdictional. *Cf. State v. Savastini*, 14 *N.J.* 507, 515, 103 *A.2d* 249 (1954). Nor is there reason to infer that the legislature intended to foreclose resort to court rules and decisional law relaxing normal venue requirements in particular circumstances. If these two expungement applications had been brought in separate counties, they could have been consolidated. *R.* 4:38-1(a). Venue could also have been changed upon a showing as to "the convenience of parties and

witnesses in the interest of justice." *R.* 4:3–3(a).[3] Permitting the two actions to be joined initially in a single action surely "has the virtue of avoiding such a two-step process in order to place related claims before the same court." *State D.E.P. v. Middlesex Cty. Freeholders Bd.*, 206 *N.J.Super.* 414, 421, 502 *A.*2d 1188 (Ch.Div.1985), aff'd 208 *N.J.Super.* 342, 506 *A.*2d 13 (App.Div.1986). We are thus persuaded that the application to expunge records of the Union County arrest was properly included in the Monmouth County proceeding. *Id.; cf. Savastini*, 14 *N.J.* at 520, 103 *A.*2d 249; *Engel v. Gosper*, 71 *N.J.Super.* 573, 580–581, 177 *A.*2d 595 (Law Div.1962).

The order denying expungement is reversed. The matter is remanded to the Law Division, Monmouth County for entry of an expungement order with respect to the Monmouth County conviction and for further proceedings with respect to the Union County arrest.

---

[3]If expungement proceedings were characterized as criminal in nature, similar exceptions to normal venue requirements would be available. *See, e.g., R.* 3:14–2, *R.* 3:15.