**STATE of Delaware**

v.

**Eddie BAKER, Tracie Payne, Kenneth Presnell, Daniel Robbins, Defendants.**

**Criminal Action Nos. IN–94–06–1258 through IN–94–06–1269.**

Superior Court of Delaware, New Castle County.

Submitted: Nov. 13, 1995.

Decided: March 13, 1996.

Scott J. Stein, and Shawn P. Tucker, Deputy Attorneys General, Department of Justice, for State of Delaware.

Charles M. Oberly, III, of Oberly & Jennings, P.A., for defendants Eddie Baker and Tracie Payne.

Eugene J. Maurer, Jr., of Eugene J. Maurer, Jr., P.A., for defendant Kenneth Presnell.

J. Dallas Winslow, Jr., Assistant Public Defender, Public Defender's Office, for defendant Daniel Robbins.

## OPINION

HERLIHY, Judge.

Defendants Eddie Baker [Baker], Tracie Payne [Payne], Kenneth Presnell [Presnell] and Daniel Robbins [Robbins] [collectively "defendants"] have been indicted for arson second degree, insurance fraud and conspiracy second degree. All offenses are felonies and are alleged to have occurred on February 22, 1987. Defendants have moved to dismiss the indictment on the basis of the statute of limitations.[1]

## FACTS

Presnell leased a property at 1327 Newport Gap Pike which he used for his residential. and commercial painting business. At approximately 7:50 p.m. on February 22, 1987, a report was made of a fire in this building. Minutes before, four young men, who happened to be in the area, observed someone open an overhead door to the premises. The witnesses noticed a fire inside while the door was still up.

The door was then closed. The witnesses noticed smoke coming from the building but lost track of the person they had seen exiting the building. One of the four witnesses promptly reported the fire. None of the four witnesses were able to identify the person exiting the building.

Five fire companies responded. It was soon determined that kerosene had been poured on the concrete floor of the building and on the vehicles inside. A burnt rag was found which the State Fire Marshal believed acted as the torch for the kerosene.

The fire was on a Sunday. Presnell, Baker and Robins said they were working in the paint shop earlier on that day. Presnell purchased around thirty gallons of kerosene between 10:00 a.m. and 1:00 p.m. that day at a Texaco station. The kerosene was allegedly used to fuel kerosene heaters in the shop. Presnell, Baker and Robins told investigators they left the shop around 2:00 p.m. to 2:30 p.m. Presnell says that he locked one of the doors. It turned out that the firemen had to break in this door not knowing that the overhead door had been left unlocked.

The Fire Marshal investigators interviewed the three men and others. At first Robbins gave an account of his whereabouts but other witnesses raised significant doubts about that version. Those witnesses described Robbins as arriving to pick up his daughter at 8:15 p.m. from some babysitters. They described his clothing as having a strong odor of kerosene.

Robbins was interviewed a second time. On this occasion he said the smell came from working on his father's car. He related that at some date prior to the fire, Presnell had said "Wouldn't it be something if the place (a former shop) went up in smoke? What if the place burnt up?" Robbins also said Presnell was in deep trouble and had remarked about moving down South.

1. Because of conflicts-of-interest questions raised, the defendants had to change counsel. *State v. Baker*, Del.Super., Cr.A. Nos. IN–94–06–1258–60, 1995 WL 108909, Herlihy, J. (February 15, 1995). This has caused delay in processing their motion. In addition, after quite some time, the parties were able to submit a stipulation of facts in lieu of having a hearing.

When re-interviewed for a third time, Robbins said a Mark Cotron [Cotron] told him about the fire on Monday morning, February 23, 1987. According to Robbins, Cotron also said not to talk about it until they talked to Presnell. Prior to this third statement, Robbins spoke to Baker who remarked he, Robbins, must have set the fire for Presnell or for money. Robbins then denied setting the fire at all.

On March 17, 1987, a Fire Marshal investigator interviewed Presnell at some length. This was at least his second interview. The one suspect Presnell named turned out to have been in Gander Hill at the time of the fire. Presnell said the claim he made to Harleysville Insurance Company [Harleysville] was the only one he had made involving the fire.

Presnell said he found out about the fire because he and his family were having dinner at a restaurant near the shop, heard and saw the fire trucks and investigated what was going on. The investigator asked Presnell about his whereabouts during February 22, 1987, and his purchase of the kerosene. Presnell said he bought the kerosene on February 21, 1987.

Some of the other questions and answers were:

Q. Do you suspect anyone in particular of setting this fire?

A. No I don't.

Q. Do you know who set the fire?

A. No I don't.

Q. Did you set the fire?

A. No I did not.

Q. Did you tell someone to set the fire for you?

A. No I did not.

Q. Do you feel this fire was accidental in nature?

A. [sigh] I ... I don't know what to feel because I don't really you know, they have never tole [sic] me the Fire Marshal has never told me he, the only thing the Fire Marshal told me that it was arson.

Q. Okay, do you

A. And I'm only going by what he says ... Ha.

\* \* \* \* \* \*

Q. Did you participate in any way in the cause of this fire?

A. No.

Q. Prior to the fire, had you prepared an inventory of the contents?

A. ... nnn ... uh just my uh sprayers not an inventory of the paints and ladders and stuff like that.

Q. Why had you prepared an inventory on your sprayers?

A. Well I, it was prior to the fire, it was prior that I made an inventory it was I'd made the inventory probably three or four years ago for the insurance company.

\* \* \* \* \* \*

Q. Do you have any bank loans out, I imagine you probably do with the car don't you?

A. Uh it was all leased, all my vehicles except the 1970 Ford Bucket Truck was leased.

Q. The 70 Ford Bucket Truck was that paid off?

A. Yes.

\* \* \* \* \* \*

Q. Okay did you have loans with any other banks?

A. Bank of Delaware.

Q. And what did you have with them?

A. I had a uh, $20,000.00 loan with em that was paid off down, like I owed them like one payment it was paid off in February.

Q. With all of your suppliers, the banks, and things of this nature, were all of your payments up-to-date or were you running behind or anything?

A. [Sigh] I wasn't running behind on nothing.

Q. You were up-to-date, okay. How was business were you extremely busy?

A. Uh yes. Yes and no. We was busy but not like it would be in the summer months.

\* \* \* \* \* \*

Q. Do you expect to gain financially from this fire?

A. No.

\* \* \* \* \* \*

Q. Did you remove any of your personal contents prior to the fire?

A. No.

Q. Have you ever had a previous fire loss?

A. No.

\* \* \* \* \* \*

Q. Prior to the fire had you experienced any financial problems?

A. Nope [sigh].

\* \* \* \* \* \*

Q. To the best of your knowledge have you answered all of the above questions truthfully?

A. Yes

Q. Have you intentionally withheld any information concerning this fire?

A. Nope.

Transcript of Kenneth Presnell Interview (March 17, 1987) at 17, 19–22.

Robbins was indicted on April 1, 1987 for arson. No others were indicted. On May 16, 1988, the charge was *nol prossed* on the grounds of insufficient evidence.

In lieu of a hearing, the parties reached a stipulation that if Fire Marshal Russell Staats were to testify, he would say:

a) He was the chief investigating officer in this case;

b) He conducted no additional investigation other than that which is set forth in the attached reports;

c) After the charges against [Robbins] were dismissed, he conducted no further investigation into the cause or origin of the fire and conducted no further investigation into identifying the perpetrators of the crime;

d) Defendants Presnell, Payne and Baker were viewed as possible suspects by the Fire Marshal's Office in 1987;

e) On or about April 26, 1994, the Fire Marshal's Office received information to the effect that Robbins had set the fire

along with [Baker] at the request of [Presnell] and that [Payne] drove Baker to the fire scene;

f) As a result of receiving the above information the investigation was reopened resulting in the instant indictment against all four defendants in June of 1994.

Stipulation (filed November 13, 1995) at 2–3. The reports referenced in the stipulation are all from 1987 and reflect investigative summaries and witness statements. The last report is dated April 21, 1987.

As noted earlier, defendants were indicted for arson second degree, insurance fraud and conspiracy to commit either or both of those offenses. Each of the three counts contains the following additional language:

The above listed offense includes acts which constitute fraud and which were not discovered until after April 24, 1994, when the State Fire Marshall's Office was contacted and provided with previously unknown information, thereby extending the Statute of Limitations beyond five years for Felony offenses pursuant to Title 11, Section 205(c), of the Delaware Code of 1974, as amended.

Indictment at 1–2.

### PARTIES' CONTENTIONS

The defendants contend that the action against them is barred by the five-year statute of limitations applicable to all felonies but murder. 11 *Del.C.* § 205(b)(1). There are exceptions to this bar. The exception at issue in this case basically provides that where a defendant's conduct amounts to fraud, the five-year limitation is tolled if prosecution is commenced after the offense has been discovered or should have been discovered with ordinary diligence. 11 *Del.C.* § 205(c).

The defendants argue that the charges of arson and conspiracy to commit arson do not involve fraud. As to the charge of insurance fraud and conspiracy to commit insurance fraud, the defendants contend that with the exercise of ordinary diligence, the offenses

should have been discovered.[2] Since no ordinary diligence was exercised, they contend, these two charges are barred.

The State's response is that it did diligently pursue the investigation and that the defendants' denials of guilt in 1987 amounted to fraud. The State argues that these acts make fraud an element of all of the offenses in the indictment. Having met both criteria for tolling the statute of limitations, the State says it can proceed with the prosecution.

The issues raised are of first impression in Delaware.

## DISCUSSION

### A

Even though the facts are not in dispute, a threshold issue is whether the Court can decide this motion or whether it requires fact-finding by a jury. While Superior Court Criminal Rule 12 speaks to the filing of pretrial motions, it does not provide guidance to the appropriate resolution of this threshold issue. No Delaware court has ruled on this issue either where there are potential factual disputes or different factual inferences to be drawn from underlying undisputed facts.

∎ The procedure whereby the Court can consider a motion to dismiss prior to trial has been compared to a civil motion for summary judgment. *State v. Ochmanski,* 216 N.J.Super. 240, 523 A.2d 289, 291 (1987). In effect, if there are genuine issues of material fact, a jury must decide the issue involved. *Id.*

For instance, whether a defendant is a fugitive from justice, which, if he were, tolls the statute of limitations, is properly a jury question. *State v. Greenberg,* 16 N.J. 568, 109 A.2d 669, 674 (1954). Further, whether, for tolling purposes, a defendant remained a "usual resident" or concealed himself is a jury question. *Commonwealth v. Dunnick,*

204 Pa.Super. 58, 202 A.2d 542, 545 (1964); accord *Commonwealth v. Groff,* 378 Pa.Super. 353, 548 A.2d 1237, 1246 (1988).

### B

The necessary starting point for the court's analysis is § 205(c) which states:

If the period prescribed by subsection (b) of this section has expired, a prosecution for any offense in which the accused's acts include or constitute forgery, fraud, breach of fiduciary duty or actively concealed theft or misapplication of property by an employee, pledgee, bailee or fiduciary may be commenced within 2 years after discovery of the offense has been made or should have been made in the exercise of ordinary diligence by an aggrieved party or by an authorized agent, fiduciary, guardian, personal representative or parent (in the case of an infant) of an aggrieved party who is not a party to the offense. In no case shall this provision extend the period of limitation otherwise applicable by more than an additional 3 years beyond the period specified in subsection (b) of this section.

Section 205(i) requires the State to allege the applicable language of subsection (c), if it seeks to avoid the limitations' bar. The State has done that in this matter.

The tolling provisions of § 205(c) require two elements applicable to this case. The first is "acts constitut[ing] . . . fraud" and the second is commencement of prosecution[3] within two years after discovery of the offense or when the offense should have been discovered using ordinary diligence.

The defendants argue that the charges of arson and conspiracy to commit arson do not contain an element of fraud as an underlying element of either offense. They contend also that the State did not exercise ordinary diligence in its investigation after 1987. Since the first of the two tolling provisions involves

---

**2.** Count II of the indictment charges the three defendants with conspiracy to commit arson and/or insurance fraud. This disjunctive "joinder" of two distinct offenses is a *very* problematical method of charging, rather than two distinct conspiracy counts, and is unwise and should be avoided.

**3.** Under 11 *Del.C.* § 205, prosecutions must be "commenced" within certain time periods. A prosecution is commenced by the finding of an indictment or the filing of an information. 11 *Del.C.* § 205(g).

the issue of "fraud", it will be addressed first. The fraud issue is one of statutory construction only. The second contention will be addressed shortly.

The State's position is that the tolling provisions of § 205(c) regarding fraud are not limited to crimes that contain fraud as an element of the underlying offense. It also claims that the defendants committed fraud by their concealment and denial of their culpability. These contentions require an examination of various additional provisions of the Criminal Code (11 *Del.C.* §§ 101–1511).

The State points to 11 *Del.C.* § 232 in support of its argument that, to avoid the statute of limitations, it must affirmatively allege the tolling provisions of § 205(c) in the indictment and, having done so, they then become elements of the offense.

"Elements of an offense" are those physical acts, attendant circumstances, results and states of mind which are specifically included within the definition of the offense or, if the definition is incomplete, those states of mind which are supplied by the general provisions of this Criminal Code. Facts establishing jurisdiction and venue and establishing that the offense was committed within the time period prescribed in § 205 of this title must also be proved as elements of the offense.

11 *Del.C.* § 232.

Once these provisions are alleged as an element of the offense as was done here, fraud becomes an element of any offense under the Criminal Code, according to the State. Fraud is a word defined by the Criminal Code:

"Fraud" means an intentional perversion, misrepresentation or concealment of truth.

11 *Del.C.* § 222(11).

■ Since the State alleges the defendants concealed or misrepresented the truth of their involvement when this fire was investigated and they were interviewed in 1987, they committed fraud. If, as the argument goes, the State can prove that they did, it has avoided the statute of limitations.

The Criminal Code provides the initial interpretive guideline:

The general rule that a penal statute is to be strictly construed does not apply to this Criminal Code, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this title.

11 *Del.C.* § 203. When interpreting statues, the Court's role is to determine and give effect to the legislature's intent. *Hudson Farms v. McGrellis,* Del.Supr., 620 A.2d 215, 217 (1993). Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls. *Streett v. State,* Del.Supr., 669 A.2d 9, 12 (1995). The various sections above-cited have to be read in *pari materia. State Farm Mut. Auto. Ins. Co. v. Wagamon,* Del. Supr., 541 A.2d 557, 560 (1988).

■ If possible to do so, statutes must be construed to achieve a common sense result, a result which is harmony with constitutional principles, and to avoid a construction which would lead to unreasonable or absurd results. *Snell v. Engineered Systems & Designs, Inc.,* Del.Supr., 669 A.2d 13, 20 (1995).

The crucial statute is § 205(c). "Fraud" cannot be examined in isolation or surgically removed from its context. The key phrase is "the accused's acts include or constitute forgery, fraud, breach of fiduciary duty or actively concealed theft or misapplication of property by employee, pledgee, bailee or fiduciary". 11 *Del.C.* § 205(c).

■ The use of the word fraud in this context invokes another statutory interpretive principle, *ejusdem generis.* Basically, this principle says where general words follow specific words of a particular or specific meaning, the wider meaning is not given to the general word but instead a meaning consistent with the more specific meaning. *Triple C. Railcar Service v. Wilmington,* Del. Supr., 630 A.2d 629, 631 (1993).

With this principle in mind, it is manifest that fraud must be an element of the underlying crime. The words "forgery", "breach of fiduciary duty", "concealed theft" and "misapplication of property" provide the context. Such words import stealing and stealth

as part of the underlying crime itself. While all crimes arguably involve stealth because the culprit does not want to be caught, stealth alone is insufficient to extend the statute of limitations. Nor is stealing alone necessarily enough to satisfy these tolling exceptions.

And yet that is what the State argues "fraud" means. Because it is defined to include "misrepresentation or concealment of truth", § 222(11), anytime a defendant denies involvement but is lying, the State's position is that it can bring charges on any crime within two years after the lie is uncovered.

In *Cane v. State,* Del.Supr., 560 A.2d 1063 (1989), the Supreme Court recognized that § 205 is a statute of repose. *Id.* at 1066. The State's position is inconsistent not only with the language of § 205 but with the finality of § 205 with its few recognized exceptions. As desirable as some may believe it to be, such a broad interpretation would eviscerate § 205.

This Court's interpretation of § 205 is consistent with interpretation of similar, though not identical, limitations statutes in other states. *See Commonwealth v. Goldhammer,* 507 Pa. 236, 489 A.2d 1307 (1985), rev'd on other grounds, *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (theft by unlawful taking does not include fraud or breach of fiduciary duty which are the two elements of tolling statute of limitations); *Commonwealth v. Hawkins,* 294 Pa.Super. 57, 439 A.2d 748 (1982) (fraud is not a material element of receiving stolen property).

The elements of arson second degree are intentionally: (1) damaging a building (2) by starting a fire or causing an explosion. 11 *Del.C.* § 802. The elements of conspiracy charged here are that, when the defendants intended to commit a felony (arson second degree), they agreed to commit arson and committed an overt act in furtherance of their agreement by committing arson. 11 *Del.C.* § 512.

As defined in the Criminal Code, clearly fraud is not a material element of either of these offenses. Therefore, as to the first of the two thresholds tolling the five-year statute of limitations, the State cannot cross it as a matter of law. There is no issue here of the jury deciding anything.

The Court's conclusion is consistent with § 232 which requires the State to affirmatively allege the grounds for tolling the statute of limitations. The State then also becomes obligated to prove the *tolling elements* along with the original material elements of the crime as part of its case.

Accordingly, the charges against all defendants of arson second degree and conspiracy to commit arson must be dismissed because they are time barred.

### C

The charges of insurance fraud and conspiracy to commit insurance fraud require a different analysis.

The defendants have been indicted for intending to defraud an unnamed insurer. The material elements of insurance fraud are (1) when intending to injure, defraud or deceive an insurer, a person (2) presents a written or verbal claim for insurance (3) knowing the claim contains false, incomplete or misleading information regarding a material part of the claim or (4) aids, abets, solicits or conspires with another to do the same. 11 *Del.C.* § 913.[4] Using the same statutory construction principles as before, fraud is clearly a material element of the crime of insurance fraud as indicted in this case.

Therefore, as to these two charges, the State has passed the first of the two tolling tests. It is factually undisputed that the State indicted the defendants within the two years after the 1994 information came to its attention. However, the real issue under § 250(c) in this case is whether "discovery . . . should have been made in the exercise of ordinary diligence" by the State. According to the stipulation of facts, the last investigative act prior to April 26, 1994 was a report

---

4. *Insurance fraud, § 913, is listed under subpart I of the Criminal Code entitled "Other Frauds and Cheats". However, such titles are not part* of the substantive provisions of the law itself. 1 *Del.C.* § 306.

prepared by William Sipple dated April 21, 1987. That report reflects the arrest of Robbins on March 13, 1987. There was no investigative activity thereafter for a period of seven years.

■ The question is whether these facts established that the State was as diligent as § 205(c) requires. Using the analogy to civil law analysis employed in summary judgment motions, the initial point is that the evidence must be examined in a light most favorable to the State. *Brzoska v. Olson,* Del.Supr., 668 A.2d 1355, 1364 (1995); *cf. Jordan v. State,* Del.Supr., No. 437, 1992, Horsey, J., 1993 WL 245391 (June 23, 1993) (ORDER) (motions for judgment of acquittal require the trial judge to consider the evidence and all legitimate inferences to be drawn therefrom in the light most favorable to the State).

Examining all of these facts in a light most favorable to the State, can the Court say, as a matter of law, that the State exercised ordinary diligence? Or is it enough of a factual question that a jury must decide? Since presumably there would be no more facts offered at the end of the State's case-in-chief at the trial of this case, would the Court, at the end of the State's case-in-chief, find the State had made a *prima facie* case of exercising ordinary diligence in discovering the defendants' alleged involvement?

When Presnell was questioned on March 17, 1987, the State knew he had made an insurance claim for the fire damage to the Harleysville. Presnell was asked if he had made claims to any other insurance companies. Presnell replied that he had not. There is nothing to indicate the State's investigators did anything more than rely upon his answer at face value.

Therefore, according to the record, the State knew in February 1987 that an arson, probably with kerosene as an accelerant, had occurred at Presnell's place of business, that Robbins, Baker and Presnell had been in the building earlier on the day of the fire, and that Presnell had bought around thirty gallons of kerosene the day of or the day before the fire. Presnell was asked many questions about his finances when questioned in March 1987. During one of his 1987 interviews, Robbins had raised questions about Presnell's alleged comments concerning (1) burning his shop, (2) financial problems and (3) leaving the State.

While Robbins alone was indicted in April 1987, there was no investigative action even involving *him* from then until the State dropped the charges against him in May 1988. The next investigative step was fortuitous for the State. Without any action by the State, someone came forward seven years later and provided information which led to the current indictment.

Neither the phrase "exercise of ordinary diligence" nor the constituent words are defined in the Criminal Code:

> If a word used in this Criminal Code is not defined herein, it has its commonly accepted meaning, and may be defined as appropriate to fulfill the purposes of the provision as declared in § 201 of this title.[5]

11 *Del.C.* § 221(c). "Diligence" has been defied as, "the attention and care legally expected or required of a person". *Webster's Ninth New Collegiate Dictionary* at 355. "Ordinary" is defined as "[o]f a kind to be expected in the normal order of events: ROUTINE, USUAL … of common quality, rank, or ability". *Id.* at 831.

In a civil action for fraud where, to avoid the statute of limitations, reasonable diligence must be plead and shown, a *California* court stated:

> (4) To differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor; and
>
> (5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection.
>
> 11 *Del.C.* § 201.

---

5. The general purposes of this Criminal Code are:
 (1) To proscribe conduct which unjustifiably and inexcusably causes or threatens harm to individual or public interests;
 (2) To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;
 (3) To define the act or omission and the accompanying mental state which constitute each offense;

A "diligent inquiry" was early defined in this state as one involving the exercise of "ordinary or reasonable diligence [in making inquiry]—such as men of business usually exercise when their interest depends upon obtaining correct information." . . . This is in consonance with the classic and more extended definition of Judge Story which defines "ordinary diligence" as that "which men of common prudence generally exercise about their own affairs in the age and country in which they live."

*Scafidi v. Western Loan & Building Co.*, 72 Cal.App.2d 550, 165 P.2d 260, 271 (1946) citing *Garver v. Downie*, 33 Cal. 176, 182 (1867) and *Hanes v. Shapiro & Smith*, 168 N.C. 24, 84 S.E. 33, 36 (1915).

■ Ordinary diligence is considered synonymous with ordinary care. *Neal v. Wilmington & N.C. Electric Ry. Co.*, Del.Super., 53 A. 338, 339 (1902). Ordinary care includes the failure to use care that a reasonably prudent person and careful person would use under similar circumstances. *Amoco Chemical Corp. v. Hill*, Del.Super., 318 A.2d 614, 617 (1974).

For seven years no one on behalf of the State did anything. The denial of culpability, despite clear suspicions to the contrary, shut down the investigation. There is nothing in this record about the claim Presnell made to Harleysville. There are no claim forms, investigative interviews with the insurer or its representatives and no indication the claim was or was not paid, and if paid, when.

As noted, no action of any State investigator or agent prompted the 1994 information which reopened the case. The authorities knew of the arson, the insurance claim and had legitimate suspects. Under these circumstances, it simply cannot be exercising ordinary diligence or care to completely end an investigation, do nothing and then claim the right to reopen it after seven years.

The Court's analytical approach to the facts needs to be emphasized. The Court's focus has been, as it would be at trial, on whether the facts the State would prove, establish a *prima facie* case of exercising ordinary diligence. That is, the starting point is necessarily these facts the State would show at trial.

In another case it may be appropriate to let the issue of "ordinary diligence" be determined by a jury, but this is not that case. The totality of what would be presented at trial has been submitted pretrial by stipulation. Looking at the record in a light most favorable to the State, the defendants are entitled to "judgment as a matter of law". In other words, the State has failed to make a *prima facie* case of the exercise of ordinary diligence.

## CONCLUSION

For the reasons stated herein, the motions to dismiss of defendants Eddie Baker, Tracie Payne, Kenneth Presnell and Daniel Robbins are **GRANTED**.