33 A.3d 540 (2012)
423 N.J. Super. 475
In The Matter of The Application for Expungement of the Criminal Records of Marino LOBASSO.
Docket No. A-3577-10T4
Superior Court of New Jersey, Appellate Division.
Telephonically argued November 9, 2011.
Decided January 10, 2012.
*543 Daniel B. Kelley, Cherry Hill, argued the cause for appellant Marino LoBasso (Kelley Law Offices, LLC, attorneys; Mr. Kelley, on the brief).
Andrew M. Megill, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Marlene Lynch Ford, Ocean County Prosecutor, attorney; Mr. Megill, on the brief).
Before Judges AXELRAD,[1] SAPP-PETERSON and OSTRER.
The opinion of the court was delivered by
OSTRER, J.S.C. (temporarily assigned).
Petitioner appeals from a February 9, 2011 Law Division order denying his application to expunge records of his 2005 conviction for third-degree eluding, N.J.S.A. 2C:29-2b. He relies on the recent enactment that reduced the waiting period for expungement of certain indictable offenses from ten years to five years after the date of conviction, payment of *544 fine, completion of probation or parole, or release from incarceration. L. 2009, c. 188, § 1, approved January 12, 2010, codified at N.J.S.A. 2C:52-2a(2). A petitioner may utilize this early pathway to expungement if the court finds "in its discretion that expungement is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction." Ibid. Construing the 2010 amendment, we conclude that the court may consider factors in addition to those pertaining to the "nature of the offense" and the applicant's "character and conduct since conviction." The court may also consider cognizable evidence pursuant to Rule 1:6-6 related to an arrest on a charge that was ultimately dismissed, although the court may not consider the arrest itself as evidence of guilt. State v. Brooks, 175 N.J. 215, 229, 814 A.2d 1051 (2002). Applying these legal conclusions, we affirm the trial court's order denying expungement.

I.
Petitioner prematurely filed a verified petition seeking expungement on October 29, 2010, which was less than five years after he completed probation on January 24, 2006. Cf. N.J.S.A. 2C:52-2a(2) (requiring at least five years after completion of probation before eligibility for expungement of conviction of indictable offense). After the court alerted the State that the matter had been filed under the early pathway provision, the State filed opposition by letter brief dated January 20, 2011, to which was attached various exhibits. Petitioner filed no reply. The petition was heard February 9, 2011, shortly after the prerequisite five-year period expired. The court considered documentary evidence pertaining to the nature and circumstances of the eluding offense, and petitioner's conduct and character since the offense. We address these in turn.

A.
According to a police report that the State submitted to the court, on June 19, 2004 at about 4:30 p.m., a Brick Township police patrolman observed the operator of a red, white and black Honda motorcycle, wearing a helmet with matching colors, fail to stop at a red light at an intersection, and then turn left across four lanes of moderate traffic nearly striking another vehicle. The patrolman was able to determine that the registration, in petitioner's name, was expired. The patrolman attempted to conduct a motor vehicle stop, activating warning lights and siren. The motorcycle then sped off, leading the officer in a pursuit through local streets, until the motorcycle entered the Garden State Parkway, at which point the officer terminated pursuit.
Two days later, petitioner reported to police that his motorcycle had been stolen the day of the pursuit. The patrolman who conducted the pursuit responded to petitioner's home to investigate the theft report. The officer suspected, based on petitioner's appearance and the design of the motorcycle helmet he observed at petitioner's home, that the petitioner had operated the motorcycle he claimed had been stolen. Petitioner ultimately admitted he had operated the vehicle on June 19 and his theft report was false. In an unsigned transcript of a Mirandized[2] statement, petitioner admitted that he continued driving knowing that a police officer wanted him to stop, his speed exceeded the officer's, and the officer ultimately fell out of view. He stated that after he entered the Garden State Parkway, he drove to a friend's *545 house, and stored the motorcycle in his shed.
Petitioner was initially charged by summons on June 22, 2004 with filing a false report, N.J.S.A. 2C:28-4b, and eluding, N.J.S.A. 2C:29-2b. He was also charged with numerous motor vehicle violations, including driving an unregistered motor vehicle, N.J.S.A. 39:3-4, failing to observe traffic signals, N.J.S.A. 39:4-81, failure to maintain lane (two times), N.J.S.A. 39:4-88b, reckless driving (four times), N.J.S.A. 39:4-96, improper left turn, N.J.S.A. 39:4-123b, failure to signal, N.J.S.A. 39:4-126, and failure to carry motor vehicle insurance coverage, N.J.S.A. 39:6B-2. He was later indicted in a single-count indictment for second-degree eluding, N.J.S.A. 2C:29-2b.
Petitioner entered a plea on October 12, 2004 to an amended charge of third-degree eluding. The State promised to recommend a non-custodial probationary term, and six months driver's license suspension. The State also promised to seek dismissal of the false report charge, as well as all the motor vehicle tickets, except the one that charged driving an unregistered motor vehicle.
The court sentenced petitioner on January 14, 2005 in accord with the plea agreement, imposing eighteen months probation on the eluding conviction. The court found aggravating factor nine, the need to deter, was in balance with mitigating factors seven, the absence of a prior record of delinquency or criminal activity (petitioner was thirty-eight years old), and ten, amenability to probation.[3]N.J.S.A. 2C:44-1a(9), b(7), b(10).

B.
Petitioner was discharged from probation early, on January 24, 2006. He had not been convicted of any crimes or offenses since his eluding conviction.
He asserted in his verified petition that he was a homeowner (he had become a Pennsylvania resident), and had been gainfully employed, although he provided no details or documentary evidence of where and when he was employed. He provided character references in the form of two unsworn letters, one from his former wife and another from a friend who is employed as a police officer in Pennsylvania.
His former wife stated that she had known petitioner for twenty-seven years. They divorced young. He dutifully paid child support and "went over and above his obligations as a father." Without suggesting a basis in personal knowledge, she also asserted his conviction caused him financial hardship. He lost his home in New Jersey, and she and petitioner were unable to afford to send their son to college. Petitioner had worked in construction, where background checks were not necessary. His criminal record prevented him from obtaining employment with health insurance. She alleged that he desperately needed medical insurance based on his medical condition.
Petitioner's friend stated that he had known petitioner for thirteen years. They first met when petitioner was his supervisor at his place of work. He stated that petitioner was a dedicated father, and had been a mentor to him.
At oral argument, petitioner's counsel also provided the court documents from *546 Goodyear Tire and Rubber Co. and Federal Express, to support his argument that petitioner had applied for employment with Goodyear in 2005 (when petitioner was still on probation) and Federal Express in 2007, but was unsuccessful after the businesses obtained his conviction record.
Petitioner also conceded in his verified petition that he had been arrested for simple assault on December 31, 2004more than two months after he entered his plea to eluding, but before sentencing.[4] He asserted that the charge was dismissed in Brick Township Municipal Court in April 2005.
In response, the State provided to the court the related domestic violence complaint filed by the alleged assault victim, petitioner's girlfriend, and related police reports. In her domestic violence complaint, she certified that during an argument, petitioner grabbed her by the neck and pushed her into a door; pushed her down again; then dragged her by the right arm, causing redness and bruising to her right bicep. She alleged prior unreported assaults in March, June and July 2004. A temporary restraining order was issued. Petitioner was arrested, apparently pursuant to N.J.S.A. 2C:25-21a(1) (stating that when an alleged victim exhibits "signs of injury caused by an act of domestic violence," police shall arrest the alleged perpetrator and sign a criminal complaint).
Pursuant to a search warrant, police seized a 9 mm handgun and other weapons. The Family Part entered an order in February 2005, compelling petitioner to sell his handgun, and other firearms that were seized on December 31, 2004.
According to petitioner's motor vehicle abstract and the New Jersey Automated Traffic System, after petitioner was sentenced on the eluding charge, he was charged in March 2007 with careless driving, N.J.S.A. 39:4-97, and ultimately pled guilty to obstructing passage of other vehicles. N.J.S.A. 39:4-67.[5]
Finally, petitioner submitted copies of his 1984 associates degree in applied science from Brookdale Community College.

C.
The court heard oral argument on the expungement petition on February 9, 2011. Petitioner's counsel was heard first and was permitted a reply. Neither side sought to call witnesses. After counsel concluded oral argument, the judge began to render his decision from the bench. Petitioner's counsel then interrupted, "My client had asked to address the Court. I'm sorry. I wasn't aware. Would your Honor entertain that?"
The judge explained that he needed to leave the bench in fifteen minutes, but he offered to return at 4 p.m. to allow petitioner *547 to speak, and then conclude the matter. Petitioner's counsel declined, stating that he had a municipal court appearance that evening and could not remain. The court then offered to continue the matter on February 28 at 9:00 a.m. Petitioner's counsel stated he was unavailable because of a scheduled medical procedure. Lastly, the court stated that petitioner could return without counsel at 4 p.m. to make his statement, but he would be subject to cross-examination. At that point, petitioner's counsel conferred with his client and stated, "[W]e'll just submit for a decision at this time."
In denying relief, the judge characterized expungement under the early pathway as "extraordinary relief."
This is extraordinary relief that is being sought. This is an area thatof the law where we don't have a lot of guidance. It is the petitioner's burden here to prove that he's worthy of the expungement under any circumstances and, likewise, under the five-year period as opposed to the ten-year period.
The court reviewed the nature of petitioner's offense, finding that the eluding posed a risk to public safety. The court noted that petitioner was a mature man in his thirties when he committed the offense, not a young driver whose poor judgment might be more understandable. The court also found that petitioner tried to persuade the police that the motorcycle was stolen, relying on petitioner's own Mirandized statement.
The court also considered the domestic violence case. Although the court recognized that petitioner was not convicted, the court nonetheless was persuaded that petitioner committed an act of assault, relying on the statements in the plaintiff's certified complaint and the police report. The court concluded, based on petitioner's arrest, that the officer must have viewed what appeared to be an injury. The court noted that the court issued a TRO. The judge asked petitioner's counsel whether, as he suspected, plaintiff voluntarily dismissed the domestic violence complaint. Counsel asserted that the case was tried and the complaint found unsubstantiated, but he did not provide the order or any other evidence that the domestic violence trial was concluded on the merits.
The court found the proofs sparse regarding petitioner's conduct and character since his conviction. Petitioner presented evidence of only two unsuccessful employment applications and had not persuaded the court that the conviction record had a substantial negative impact on his employability. That petitioner had led a law-abiding life since the conviction, but for his motor vehicle violation, was insufficient by itself to justify what the court called "extraordinary exceptional relief" under the statute.
Petitioner appeals and essentially raises three points. First, he argues the court misconstrued the 2010 amendment by deeming the early pathway exceptional and extraordinary relief and thereby imposing an excessive burden on petitioner to establish that expungement was in the public interest. Second, petitioner argues that the court erred in considering the arrest of the dismissed assault charge. Third, petitioner argues the trial judge denied petitioner's right to due process and to be heard. We reject each of these points.

II.

A.
We begin by reviewing the language of the 2010 amendment and prior law. As pertinent to the instant appeal, the new law supplements subsection (a) of N.J.S.A. 2C:52-2, which provides, subject to exceptions, *548 a presumptive entitlement to expungement after ten years.
In all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and who has not been convicted of any prior or subsequent crime, whether within this State or any other jurisdiction, and has not been adjudged a disorderly person or petty disorderly person on more than two occasions may, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later, present a duly verified petition as provided in section 2C:52-7 to the Superior Court in the county in which the conviction was entered praying that such conviction and all records and information pertaining thereto be expunged.
[N.J.S.A. 2C:52-2a.]
Certain crimes however, are not eligible for expungement at all. N.J.S.A. 2C:52-2b (listing ineligible crimes); N.J.S.A. 2C:52-2c (certain drug-related crimes made ineligible).
It is well-settled that if a petitioner meets the objective requirements of subsection (a) by setting forth in an appropriate, verified petition, N.J.S.A. 2C:52-7, -8, that ten years elapsed since completion of a sentence and no subsequent convictions were incurred, then he or she is "presumptively entitled" to expungement. In re J.N.G., 244 N.J.Super. 605, 610, 583 A.2d 364 (App.Div.1990). See also In re L.B., 369 N.J.Super. 354, 363, 848 A.2d 899 (Law Div.2004) ("[E]xpungement is . . . routinely granted where the requirements of the statute have been satisfied."). A petitioner has the burden to establish these objective requirements by a preponderance of the evidence. In re D.H., 204 N.J. 7, 18, 6 A.3d 421 (2010) ("[I]n general, to support a petition for expungement, `[a] petitioner has the burden to satisfy the requirements of the expungement statute' . . . by a preponderance of the evidence[.]") (quoting In re G.R., 395 N.J.Super. 428, 431, 929 A.2d 602 (App. Div.2007)).
Once this burden is met, the burden shifts to the State. Ibid. Expungement may be denied if the State proves the "need for the availability of records" outweighs the "desirability of having a person freed from any disabilities" associated with the conviction record. N.J.S.A. 2C:52-14b. The State must prove the predominating need for record availability by a preponderance of the evidence. State v. XYZ Corp., 119 N.J. 416, 422-24, 575 A.2d 423 (1990). The court shall also deny the petition if "[a]ny statutory prerequisite, including any provision of this chapter, is not fulfilled or there is any other statutory basis for denying relief." N.J.S.A. 2C:52-14a.[6] Absent objection by the State or other authorized objectors, N.J.S.A. 2C:52-10, the court may sua sponte reject expungement on the same grounds. N.J.S.A. 2C:52-12.
The 2010 statute adds a pathway to expungement after as few as five years since completion of a sentence, provided the public interest supports expungement.
Notwithstanding the provisions of the preceding paragraph, a petition may be filed and presented, and the court may grant an expungement pursuant to this section, although less than 10 years has *549 expired in accordance with the requirements of the preceding paragraph where the court finds:
. . . .
(2) at least five years has expired from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later; the person has not been convicted of a crime, disorderly persons offense, or petty disorderly persons offense since the time of the conviction; and the court finds in its discretion that expungement is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction.

[L. 2009, c. 188, § 1, codified at N.J.S.A. 2C:52-2a(2) (emphasis added).]
Even if this public interest test is met, expungement is not assured. If a petitioner satisfies his or her burden in meeting the statutory preconditions to early pathway expungement under N.J.S.A. 2C:52-2a(2), the State may nonetheless seek denial if it can meet its burden to show that the needs for availability of records outweighs the petitioner's interest. N.J.S.A. 2C:52-14. Concededly, that weighing process under N.J.S.A. 2C:52-14 may require review of some of the same facts considered in making the public interest determination under N.J.S.A. 2C:52-2a(2). Yet, based on the statute's clear and unambiguous language, the determinations are separate and distinct.

B.
The Legislature expressly provided that the court's public interest determination in early pathway petitions is discretionary. N.J.S.A. 2C:52-2a(2). We address the scope of that discretion and suggest factors to guide it.
The Legislature apparently did not intend that expungement under the early pathway would be "routine" in the same sense as expungement after ten years. Thus, something more than the mere offense-free passage of time is required. This is evident from the history of the legislation, which was intended to fulfill a recommendation of the Governor's 2007 Strategy for Safe Streets and Neighborhoods. Assembly Judiciary Committee, Statement to A.1771 (January 28, 2008); Senate Judiciary Committee, Statement to S.3061 (December 7, 2009). As part of extensive recommendations to enhance enforcement of the criminal laws, crime prevention, and reentry of former offenders, then-Governor Corzine recommended amendments to the expungement statute "to promote employability." A Strategy for Safe Streets and Neighborhoods, Executive Summary, issued by Gov. Jon S. Corzine (2007) at 24. Regarding expungement, the Governor proposed "reducing the time frame requirements for compelling cases." Ibid. (emphasis added). See also A Strategy for Safe Streets and Neighborhoods, Reentry, issued by Gov. Jon S. Corzine (2007) at 19 ("Courts should also be given limited authority to grant expungement in a shorter time period under limited circumstances for certain offenders.") (emphasis added).
Nonetheless, courts should not presume that the public interest showing can be made only in rare or unusual cases, lest they enhance the burden already established in the statute. The court must be mindful that the statute is intended to promote re-entry of ex-offenders by creating this early pathway to expungement. It would defeat the statute's purpose to set the threshold so high that virtually no one qualifies. In short, a petitioner must surmount the public interest threshold, but nothing more.
*550 The public interest determination will necessarily be fact-specific. Trial courts will identify relevant factors as they gain experience applying the new law. However, several factors are evident from reading the amendment in the context of the expungement statute as a whole, and in light of the legislative history.
One apparent function of the original ten-year waiting period was to increase the likelihood that a beneficiary of expungement had permanently turned away from criminal activity and will not re-offend. Cf. N.J.S.A. 2C:52-32 (stating that the expungement statute shall be construed "with the primary objective of providing relief to the one-time offender who had led a life of rectitude and disassociated himself with unlawful activity"). Appropriately, then, a court may consider, in the context of an early pathway petitioner's "conduct and character," whether he or she has engaged in activities that have limited the risk of re-offending, or has avoided activities that enhanced that risk. Logically, in our view, these may include whether a petitioner has obtained job training or education, complied with other legal obligations (such as child support and motor vehicle fines), and maintained family and community ties that promote law-abiding behavior, as well as whether the petitioner has severed relationships with persons in the criminal milieu.
A petitioner's performance while incarcerated or while on probation may also be relevant. Exemplary performance on probation and early discharge would be a positive factor. On the other hand, a record of probation violations, or an extension of probation, would not. Also, generally speaking, as the number of offense-free years after conviction increase, the risk of reoffending drops. See Megan C. Kurlycheck, et al., Scarlet Letters and Recidivism: Does an Old Criminal Record Predict Future Offending?, 5 Criminology & Public Policy 3, 489 (2006). See also U.S. Bureau of Justice Statistics, Recidivism of Prisoners Released in 1994 (2002) (showing rates of recidivism decreased over the first three years following release). This fact would generally tend to support petitions made closer to the ten-year mark than the five-year mark.
In connection with a petitioner's "character and conduct since conviction," a court may consider facts related to an arrest that did not lead to a conviction, if supported by cognizable evidence, and the court makes an appropriate finding, after a hearing if necessary. A court may not infer guilt from the fact of arrest alone. State v. Brooks, supra, 175 N.J. at 229, 814 A.2d 1051 (addressing use of arrest record in determining admission to pre-trial intervention); State v. Green, 62 N.J. 547, 571, 303 A.2d 312 (1973) (addressing use of arrest records in sentencing). Yet, a court may consider the underlying facts of a dismissed charge that a petitioner admits in his guilty plea to a related charge. Ibid. (in sentencing, court may rely on arrest record of dismissed charge where the arrest "relate[s] to an offense the defendant does not dispute, which offense was disposed of without further action as part of a plea bargain involving other offenses"); see also State v. Bausch, 83 N.J. 425, 435-36, 416 A.2d 833 (1980) (court may order restitution in connection with dismissed charge based in part on defendant's admission that he caused the harm in pleading to another offense); Brooks, supra, 175 N.J. at 237-8, 814 A.2d 1051 (Albin, J., dissenting) ("[I]f a defendant entered a plea of guilty to certain charges in a multi-count indictment and the factual basis for his plea substantiated the dismissed charges, then for sentencing or PTI purposes, I see nothing improper in the use of such information.").
*551 Likewise, a court may consider other forms of admissible proof of dismissed charges. See id. at 237, 814 A.2d 1051 (Albin, J., dissenting) (distinguishing between use of fact of arrest, and reference to "factual record that support[s] the truth of the charge by some manner of proof"); see also State v. Soto, 385 N.J.Super. 247, 254-55, 896 A.2d 1148 (App.Div.2006) (in sentencing for pointing a firearm, N.J.S.A. 2C:12-1b(4), court may consider as "nature and circumstances of offense," N.J.S.A. 2C:44-1a(1), fact that "victim and two others were bound with duct tape and terrorized by defendant," where fact was established in victim's impact statement, not defendant's allocution, but "defendant impliedly authorized the judge to engage in such factfinding") (emphasis added).[7]
The statute also expressly requires the court to consider the "nature of the offense." N.J.S.A. 2C:52-2a(2).[8] We distinguish the "nature of the offense" from the circumstances of the offense. The Legislature has itself chosen to distinguish the two concepts. While the statute only requires a court to consider the "nature of the offense" in making its public interest determination, a court must consider "the nature of those . . . convictions and the circumstances surrounding them" when determining whether subsequent convictions for two or fewer disorderly or petty disorderly persons offenses should bar relief. N.J.S.A. 2C:52-2a. Elsewhere, the Code reflects that the nature of an offense is distinct from the circumstances surrounding it. See N.J.S.A. 2C:44-1a(1) (aggravating factor in sentencing is "the nature and circumstances of the offense").
The "nature of the offense" would appear to pertain to facts surrounding the grade and definition of the offense, and the facts relating directly to the elements of the offense. Thus, the nature of an eluding offense might include that a petitioner drove at high speed or over a great distance to flee an officer, and the nature of risks presented. The nature of an assault case might include the age of the victim. The nature of a burglary might include whether the structure entered was a victim's occupied bedroom, or a detached garage or vehicle when no one was present. Consistent with the purpose of the expungement statute, a court may consider for example, that a petitioner was convicted of fourth-degree resisting arrest, N.J.S.A. 2C:29-2a, as opposed to third-degree or second-degree eluding, N.J.S.A. 2C:29-2b, although a conviction for any of them may be expunged.
Nonetheless, given the broad discretion vested in a trial court under the statute, we do not construe the provision to preclude the court from considering facts in addition to those covered by "the nature of the offense" and "the applicant's character and conduct since conviction." N.J.S.A. 2C:52-2a(2) (emphasis added). A court may be justified in appropriate cases *552 in considering also the circumstances surrounding an offense. These may either enhance or weaken the strength of a petition. For example, a relatively young petitioner who committed his or her offense while in the thrall of an older and overbearing cohort may present a more persuasive case for expungement than an older petitioner who acted alone.
In connection with the circumstances of the offense, the court may also consider related, but dismissed charges, if they are undisputed. As discussed above, the dismissed charge may be substantiated by the allocution to other charges, or the dismissed charge may otherwise be undisputed. As the Court stated in reference to PTI applications, undisputed facts regarding dismissed charges may be considered "`as it is the conduct not the charge [that] governs.'" Brooks, supra, 175 N.J. at 230, 814 A.2d 1051 (quoting State v. Imbriani, 280 N.J.Super. 304, 316, 654 A.2d 1381 (Law Div.1994), aff'd, 291 N.J.Super. 171, 677 A.2d 211 (App.Div.1996)).
In assessing the public interest, the court may also consider an applicant's character and conduct before conviction. In some cases, that may favor expungement, if a petitioner could demonstrate exemplary and law-abiding behavior before his or her conviction, making it more likely that the petitioner's conviction was an aberration unlikely to be repeated. In other cases, however, a petitioner's character and conduct before conviction (for example, a history of domestic violence or repeated, serious motor vehicle violations) may reflect a pattern of disrespect for the law or a threat to public safety that may undermine a court's confidence that the public interest supported expungement.
Finally, the legislative history makes clear that successful reentry of ex-offenders is in the public interest as it promotes public safety, and enhances the lives of the ex-offenders and communities where they live. A Strategy for Safe Streets and Neighborhoods, Reentry, issued by Gov. Jon S. Corzine (2007) at 3. Thus, we believe the court may include, in its public interest analysis, cognizable evidence that the conviction record actually has impeded the petitioner's efforts to resume a productive, law-abiding life.

III.
Applying these principles, we find no mistaken exercise of discretion in the trial court's denial of the petition. In reviewing the court's exercise of discretion, we first determine whether the court correctly applied the law. See Paradise Enters. v. Sapir, 356 N.J.Super. 96, 102, 811 A.2d 516 (App.Div.2002). Assuming no error of law, we defer to a trial court's exercise of discretion so long as it was not "clearly unreasonable in the light of the accompanying and surrounding circumstances. . ." Smith v. Smith, 17 N.J.Super. 128, 132-133, 85 A.2d 523 (App.Div. 1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952); see also Parish v. Parish, 412 N.J.Super. 39, 73, 988 A.2d 1180 (App.Div. 2010) (Ashrafi, J., concurring and dissenting) (court's review of discretionary decision should be limited to "whether it falls outside a range of acceptable decisions").
We discern no misapplication of the law or unreasonable exercise of discretion. We first address petitioner's contention that the trial court "improperly heightened the standards set forth in N.J.S.A. 2C:52-2, imposing an extraordinary burden not envisioned by the Legislature in amending the expungement statute to apply more broadly." Petitioner claims the court's decision was premised upon its finding that expungement, earlier than the standard ten-year period of time, is "extraordinary exceptional relief." We find *553 no merit to this argument and conclude the court's use of words "extraordinary" and "exceptional" reflect the court's view of the nature of the relief sought in early pathway petitions, not the imposition of a heightened burden upon expungement petitioners to demonstrate they are "exceptional" or "extraordinary" applicants.
Early pathway relief is "exceptional" in the sense that the 2010 amendment creates an exception to the general requirement that a petitioner wait ten years for expungement. Moreover, the relief is "extraordinary," in the sense that a petitioner must show something more than that he or she has been offense-free for over five years. While trial courts should not place additional burdens on petitioners seeking early pathway expungement, we reject petitioner's implicit argument that relief should be routinely granted to offense-free petitioners.
We also reject petitioner's argument that the trial court inappropriately utilized petitioner's arrest for domestic violence assault. The court did not infer guilt on the basis of the fact of arrest alone. Rather, the court relied in large part on the allegations in the domestic violence complaint, which the alleged victim certified as true and therefore were cognizable evidence before the court. R. 1:6-6. The domestic violence plaintiff's allegations, presented to the court by the State, were undisputed by any admissible evidence in the record before the trial court. The court also inferred that a police officer observed physical signs of assault, based on the undisputed fact of arrest. Although petitioner's counsel asserted in oral argument that the Family Part affirmatively found the allegations unsubstantiated, he provided the court no evidence of that, before, during, or after the hearing.
The domestic violence incident related to petitioner's conduct and character before his eluding conviction, as the incident occurred before the court sentenced petitioner in accord with his plea agreement. Thus, it did not reflect a failure of his post-conviction rehabilitation. Nonetheless, a court may consider a petitioner's pre-conviction conduct.
The court appropriately considered both the nature and circumstances of petitioner's eluding offense. The offense behavior was exacerbated by petitioner's false report, which he admitted in his statement to police.
With regard to his conduct and character since his conviction, petitioner provided the court with relatively little cognizable evidence. His early discharge from probation was unquestionably a reflection of his positive adjustment to supervision. Yet, the record reflects little about how petitioner has conducted himself since his discharge. Aside from two alleged employment rejections, he provided no detailed evidence of current employment, his efforts to obtain employment, and the impact of his conviction record. Petitioner submitted two unsworn letters attesting to his dedication to his family. Petitioner himself provided no direct evidence of his medical status and the impact of his conviction record on his ability to secure insurance. In view of these facts, we do not conclude that the trial court exercised its discretion unreasonably in finding that the public interest test was unmet.
Finally, we reject petitioner's argument that the court denied his due process rights and right to be heard, when the court attempted to accommodate petitioner's late request to be heard. Petitioner's counsel did not seek to call witnesses, and did not request an opportunity for petitioner *554 to address the court until counsel had rested and the court's oral decision was already underway. The court attempted to accommodate petitioner by resuming the matter later that afternoon, but petitioner's counsel declined that opportunity, as well as an alternative date, and submitted the matter to the court. Thus, the court did not infringe petitioner's right to be heard.
Affirmed.
NOTES
[1] Judge Axelrad did not participate in oral argument. However, with the consent of counsel she has joined this opinion. R. 2:13-2(b).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The record does not include a transcript of petitioner's plea allocution, the sentencing hearing, or petitioner's presentence report. We suggest that trial courts routinely require the submission of such documents, if available, to assist the court in assessing the "nature of the offense," N.J.S.A. 2C:52-2b, as required in connection with an early pathway expungement petition.
[4] In a footnote in his brief, petitioner also requested expungement of that disorderly persons arrest, stating "[b]y and through this application . . . [petitioner] requests that at least the dismissed charge[ ] be ordered expunged from his record at this time." However, petitioner did not request this relief from the trial court, nor address expungement of the assault arrest in his notice of appeal. We will not address issues that an appellant did not raise before the trial court. State v. Robinson, 200 N.J. 1, 20, 974 A.2d 1057 (2009). Nor will we address issues raised merely by a footnote. Almog v. Israel Travel Advisory Serv., Inc., 298 N.J.Super. 145, 155, 689 A.2d 158 (App.Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297, cert. denied, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 42 (1998).
[5] The abstract also indicated that petitioner had previously been convicted of disregarding a stop sign, failure to obey a directional signal, careless driving, driving without a license, improper passing, speeding, and placing injurious substances on a highway.
[6] N.J.S.A. 2C:52-14 provides other grounds for denial of expungement of a conviction, including: the record is the subject of certain civil litigation, N.J.S.A. 2C:52-14d; the petitioner under certain circumstances had a previous criminal conviction expunged, N.J.S.A. 2C:52-14e; and the petitioner has had criminal charges dismissed following completion of a supervisory treatment or other diversion program. N.J.S.A. 2C:52-14f.
[7] But see State v. Lawless, 423 N.J.Super. 293, 304-05, 32 A.3d 562, 569 (App.Div.2011) (holding that undisputed harm to a person not the object of the crime for which defendant is sentenced, may not be considered under aggravating factor two, "the gravity and seriousness of harm inflicted on the victim," N.J.S.A. 2C:44-1a(2) (emphasis added)).
[8] With respect to expungement after ten years, we have held that the nature of the crime itself is not sufficient grounds to deny relief, particularly since the statute specifies ineligible crimes. In re J.N.G., 244 N.J.Super. 605, 609-10, 583 A.2d 364 (App.Div. 1990). See also In re XYZ Corp., supra, 119 N.J. at 424, 575 A.2d 423 (rejecting suggestion that inherent nature of environmental crimes warrant rejection of expungement). However, under the 2010 amendment, the court is expressly directed to consider the nature of the crime that is otherwise eligible for expungement.