REISNER, P.J.A.D.
*122 *51 E.C. appeals from a June 17, 2016 order denying her petition to expunge her conviction.[2] We hold that an individual who has been discharged from probation without improvement, and who has subsequently paid all outstanding fees and fines, is not barred from applying for expungement pursuant to N.J.S.A. 2C:52-2(a)(2). However, the court may consider her performance while on probation as one factor in deciding whether to grant the petition. The trial court erred in holding that E.C. was barred from applying for expungement because she had been discharged from probation without improvement. We reverse the order on appeal and remand this matter to the trial court for further consideration on an expedited basis.
I
On May 31, 2002, E.C. was arrested on drug charges that were later resolved through a plea bargain. On December 13, 2002, she pled guilty to one count of third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1), and was sentenced to three years of probation, conditioned on serving six days in jail and paying $1205 in fines and fees.[3] Pursuant to the plea agreement, the court also dismissed charges that had been filed against E.C. after an arrest on June 14, 2002.
Almost three years later, on November 18, 2005, E.C. pled guilty to violating probation, due to her failure to report to her probation officer on several occasions in 2005, failure to advise the probation officer that she had moved, and failure to pay the fines. She was discharged from probation "without improvement," and *52 all fines remained in effect. However, by February 8, 2010, she had paid off all the fines. In support of her expungement petition, E.C. submitted an October 29, 2013 letter issued by the Essex Vicinage Probation Services, advising: "All fines have been paid in full. On 2/08/2010 this case was discharged as a completed term."
On November 9, 2015, E.C. filed a petition pursuant to the "early pathway" section of the expungement statute, N.J.S.A. 2C:52-2(a)(2),[4] seeking to expunge the 2002 arrest and conviction, and to expunge the charges that had been dismissed as part of the 2002 plea bargain. She also sought to expunge the June 14, 2002 arrest on charges that were later dismissed, and a 2012 arrest that the State admitted was an error. Other than motor vehicle violations, and the mistaken 2012 arrest, she had no brushes with the law since 2002.
*123 E.C.'s petition explained that she was nineteen years old at the time of her May 2002 arrest. As a result of the 2002 conviction, she lost her public housing and was forced to drop out of college because she lost her federal aid. Her petition, which was supported by extensive documentation, also described her years-long efforts to complete her education in the health care field, while caring for her two children. By 2015, she had graduated from a business college with a 4.0 GPA and hoped to become a certified phlebotomist and medical assistant. However, her 2002 conviction hindered her ability to obtain the certification and obtain a full-time position in a hospital. Letters of support attached to her petition attested to E.C.'s good character. In summary, E.C. appeared well qualified for expungement.
*53 However, other than agreeing to expungement of the mistaken 2012 arrest, the Union County Prosecutor's Office opposed the application. The prosecutor argued that E.C. had not "satisfactorily completed" her term of probation, within the meaning of the expungement statute, N.J.S.A. 2C:52-2, because she had been discharged from probation without improvement.[5] The trial court agreed with that argument. Based on the trial court's construction of the statute, E.C. would be permanently unable to apply for and obtain expungement of her criminal record, due to her imperfect performance while on probation. See N.J.S.A. 2C:52-2(a) ; N.J.S.A. 2C:52-2(a)(2). By contrast, persons convicted of the same crime as E.C., who were sentenced to prison instead of probation and completed their sentences, would be able to apply for expungement.
II
Our review of the trial court's statutory interpretation is de novo. In re Expungement Petition of J.S., 223 N.J. 54, 72, 121 A.3d 322 (2015) ; In re Kollman, 210 N.J. 557, 577-78, 46 A.3d 1247 (2012). As discussed below, we conclude that in accepting the prosecutor's restrictive reading of the statutory language, the trial court arrived at an absurd result that was contrary to the Legislature's purpose in enacting the expungement statute. In addition, the trial court's construction of the statute is contrary to the meaning of the term "satisfactory" as ordinarily defined and as read in context.
We begin by considering the well established standards by which we interpret legislation.
Our paramount goal in interpreting a statute is to ascertain the Legislature's intent, requiring we start with the statutory language. When interpreting a statute, we give words "their ordinary meaning and significance." Further, "we must construe the statute sensibly and consistent[ly] with the objectives that the *54 Legislature sought to achieve." "We will not adopt an interpretation of the statutory language that leads to an absurd result or one that is distinctly at odds with the public-policy objectives of a statutory scheme."
[ Leggette v. Gov't Emps. Ins. Co., 450 N.J. Super. 261, 265, 161 A.3d 769 (App. Div.), certif. denied, 231 N.J. 216, 174 A.3d 515 (2017) (citations omitted) (alterations in original).]
By its terms, the expungement statute requires that an applicant have paid all applicable fines, satisfactorily completed parole or probation, or been released from *124 incarceration, "whichever is later." N.J.S.A. 2C:52-2(a)(2). The statute sets forth the criteria as follows:
at least five years has expired from the date of his [or her] conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later; the person has not been convicted of a crime, disorderly persons offense, or petty disorderly persons offense since the time of the conviction; and the court finds in its discretion that expungement is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction.
[Ibid. (emphasis added).]
The ordinary pathway section of the statute, N.J.S.A. 2C:52-2(a), under which an offender must wait longer before applying, contains the same language concerning satisfactory completion of probation. Therefore, if we accept the trial court's construction of the statute, an offender who cannot meet this requirement will never be able to apply for expungement.
In construing the term "satisfactory" we must consider the overriding purpose of the statute in which it appears. The expungement statute "shall be construed with the primary objective of providing relief to the one-time offender who has led a life of rectitude and disassociated himself [or herself] with unlawful activity...." N.J.S.A. 2C:52-32. Our Court has recognized the Legislature's remedial purpose in adopting the statute, to address barriers that hinder offenders from obtaining employment and living law-abiding lives:
Millions of adults nationwide have criminal records that affect their reentry into society years after their sentence is complete. Criminal records can present barriers to employment, licensing, and housing, among other things.
To afford a second chance to one-time offenders convicted of less serious offenses, who have led law-abiding lives since conviction, the Legislature enacted a law that *55 allows certain records to be expunged after ten years. N.J.S.A. 2C:52-2(a). In 2010, the Legislature amended the statute to broaden opportunities for expungement.
[ Kollman, 210 N.J. at 562, 46 A.3d 1247.]
Under the 2010 amendment, an individual may apply for expungement five years after completing her sentence. Ibid.; N.J.S.A. 2C:52-2(a)(2). To obtain expungement under this section, the applicant must prove that expungement is "in the public interest," in light of "the nature of the offense" and her "character and conduct since conviction." N.J.S.A. 2C:52-2(a)(2) ; Kollman, 210 N.J. at 562, 46 A.3d 1247. As Kollman recognized, the amendment reflected policy concerns of both the Governor and the Legislature " 'to promote employability' of rehabilitated ex-offenders." Id. at 570-71, 46 A.3d 1247 (citations omitted). The 2010 amendment also expanded opportunities by permitting expungement of third-degree drug offenses. Id. at 571-72, 46 A.3d 1247 ; N.J.S.A. 2C:52-2(c)(3).
In construing the amendment, the Court has emphasized that "[p]etitioners are not required to demonstrate that they are 'exceptional' or 'extraordinary' applicants." Kollman, 210 N.J. at 574, 46 A.3d 1247 (citing In re LoBasso, 423 N.J. Super. 475, 496, 33 A.3d 540 (App. Div. 2012) ). "The court must be mindful that the statute is intended to promote reentry of ex-offenders by creating this early pathway to expungement. It would defeat the statute's purpose to set the threshold so high that virtually no one qualifies." LoBasso, 423 N.J. Super. at 491, 33 A.3d 540. "[T]he legislative history makes clear that successful reentry of ex-offenders is in the *125 public interest as it promotes public safety, and enhances the lives of the ex-offenders and communities where they live." Id. at 495, 33 A.3d 540 ; see also Kollman, 210 N.J. at 577, 46 A.3d 1247.
In 2017, the Legislature further amended the statute to reduce the waiting period for an ordinary expungement application from ten years to six years, and increase the number and types of offenses that may be expunged. See L. 2017, c. 244, § 1 (enacted December 20, 2017, effective October 1, 2018). Thus, the legislative *56 history strongly suggests an intent to expand rather than restrict the opportunities available to first offenders to obtain expungement of their criminal records.
Having considered the statute's purpose, we turn to the ordinary definition of the term "satisfactory" and its meaning as gleaned from the probation statute. See In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359, 990 A.2d 1109 (2010) (statutes dealing with the same subject "should be read in pari materia ..."). The Oxford Dictionary definition of "satisfactory" is "[f]ulfilling expectations or needs; acceptable, though not outstanding or perfect."[6] In their appellate briefs, both parties accept that definition.
The probation statute further illustrates the meaning of the term. As part of a probationary sentence, a court may require a defendant to satisfy certain conditions, including paying a fine. N.J.S.A. 2C:45-1(b)(11). The court may sentence a defendant to a term of probation of up to five years. N.J.S.A. 2C:45-2(a). However, "[t]he court, on application of a probation officer or of the defendant, or on its own motion, may discharge the defendant at any time." N.J.S.A. 2C:45-2(a) (emphasis added). Upon the termination of the probationary period, "or the earlier discharge of the defendant," the defendant "shall have satisfied his sentence for the offense" unless the defendant has failed to pay any fines imposed, in which case the probationary period may be extended. N.J.S.A. 2C:45-2(c)(1). On the other hand, the court may revoke probation and resentence the defendant if she has failed to comply with a "substantial requirement" imposed as a condition of probation or has been convicted of another offense. N.J.S.A. 2C:45-3(a)(4).
As the statute indicates, a defendant who has been discharged from probation, has "satisfied his [or her] sentence," so long as he or she has paid all fines imposed. The language of the probation statute suggests that a defendant who has been discharged from *57 probation and has later paid any outstanding fines, has satisfactorily completed probation, even if his or her performance while on probation has not been perfect.
Kollman and LoBasso also support that view. As Kollman held, in construing the early pathway provision, "courts may examine an applicant's performance while in jail or on probation." Kollman, 210 N.J. at 576, 46 A.3d 1247. The Court also noted a similar discussion in LoBasso, "contrasting early discharge from probation with [a] history of probation violations." Ibid. (citing LoBasso, 423 N.J. Super. at 492, 33 A.3d 540 ). From that language, we infer that probation violations are not an absolute bar to applying for expungement. Otherwise, there would be no need for a trial court to consider probation violations as one factor in the public interest calculus, because the petitioner would be statutorily unable to apply in the first place.
*126 We hold that an individual who has been discharged from probation, albeit with an imperfect record, and has paid all outstanding fines, has satisfactorily completed probation within the meaning of the expungement statute.[7]
In this case, E.C. not only obtained a discharge from probation but she satisfied the only remaining condition she could complete, when she paid off all of her fines. As a result, according to Probation Services, her case was "discharged." Under those circumstances, we conclude that E.C. satisfactorily completed her probationary term for purposes of the statute. She completed the term in a sufficiently acceptable manner that her probation was not revoked, she paid all of the required fines, and she was *58 discharged from probation.[8] Consequently, under N.J.S.A. 2C:52-2(a)(2), she was entitled to apply for expungement five years after she paid off the fines, and she may obtain expungement if she persuades the trial court that expungement is in the public interest.
Because the trial court viewed E.C. as barred from applying for expungement under the early pathway provision, it did not consider any of the other factors pertaining to her petition in order to determine whether expungement was in the public interest. Accordingly, we remand this matter to the trial court to complete its consideration of the petition. On remand, the trial court shall take into consideration the fact that, under the 2017 amendment to the expungement statute, E.C. would soon be entitled to apply for expungement under the ordinary pathway, because eight years have now elapsed since she finished paying her fines. See LoBasso, 423 N.J. Super. at 492, 33 A.3d 540 (an early pathway application may be stronger if made "closer" to the time-frame for an ordinary application). If the court grants E.C.'s petition to expunge the 2002 conviction, it must also expunge the charges that were dismissed as part of the 2002 plea bargain. See N.J.S.A. 2C:52-14(c).
Due to the delay caused by this litigation, and because there is evidence that the conviction affects E.C.'s employment opportunities, we direct that the court issue a decision on E.C.'s petition within thirty days of the date of this opinion.
Reversed and remanded. We do not retain jurisdiction.

We use E.C.'s initials to protect her privacy, as this opinion discloses personal details from her application. Further, posting her name on the internet, as part of this opinion, would defeat the purpose of expungement, should that relief be granted on remand. See R. 1:38-3(c)(7).

We refer to these obligations, collectively, as "fines." See N.J.S.A. 2C:52-2(a).

This section permits the court to grant expungement after five years, if the court finds that expungement would be "in the public interest." N.J.S.A. 2C:52-2(a)(2). At the time section (a)(2) was adopted, an applicant ordinarily had to wait ten years before applying (the ordinary pathway). The Legislature recently reduced the ordinary pathway to six years. L. 2017, c. 244, § 1. Both the early pathway provision and the ordinary pathway provision require that an applicant who has been on probation show "satisfactory completion of probation," in addition to payment of any fines. See N.J.S.A. 2C:52-2(a).

In response to our inquiry, the Union County Prosecutor's Office was unable to identify any other prosecutor's office in New Jersey that espouses this interpretation of the expungement statute.

Satisfactory, Oxford Dictionaries Online, https://en.oxforddictionaries.com/definition/satisfactory (last visited Feb. 26, 2018).

We do not address whether an individual whose probation was revoked, and who was then sentenced to prison for the underlying offense, may apply for expungement after serving the sentence and after the statutory waiting period has expired. That issue is not before us. We note, however, that the expungement statute's primary policy focus is on the number and nature of the offenses the applicant has committed. Those offenses define who may apply for expungement. The waiting period provisions define when the person may submit the application, under either the early or the ordinary pathway.

Although it is not binding on us, we note that the Supreme Court of Hawaii engaged in similar reasoning, in construing that state's expungement statute. State v. Pali, 129 Hawai'i 363, 300 P.3d 1022, 1028-32 (2013).